608 A.2d 592

**ATLANTIC REFINING AND MARKETING CORP., Appellant,**

v.

**BOARD OF COMMISSIONERS OF
YORK TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided April 22, 1992.

David C. Keiter, for appellant.

No appearance for appellee.

Before SMITH and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

Atlantic Refining and Marketing Corporation (Atlantic) appeals from the order of the Court of Common Pleas of York County affirming the decision of the York Township Board of Commissioners (Board) which rejected Atlantic's challenge to the validity of the York Township Zoning Ordinance of 1978 (Ordinance) as it pertains to business signs. Atlantic ultimately seeks to erect a 119 square foot on-site business identification sign rather than the 32 square foot sign permitted by special exception in the zone in which its property is located.

Atlantic owns and operates a convenience store and gasoline station located on Leaders Heights Road at the southwestern corner of its interchange with Interstate Route 83 in York Township. Atlantic has owned the land since 1985 but purchased it subject to a lease which expired in 1989. The area encompassing the Leaders Heights interchange is zoned "C–S" (commercial shopping).

Atlantic applied to the York Township Zoning Hearing Board for a variance to erect a 119 square foot free-standing business identification sign, which request was denied in December 1989. In February 1990, the hearing board by special exception granted Atlantic permission to erect a 32 square foot sign which has not yet been erected. Atlantic, however, filed with the Board of Commissioners a challenge to the validity of the Ordinance alleging, inter alia, that the zoning classification of the interchange area was arbitrary and irrational; that the 32 square foot sign restriction unreasonably and unconstitutionally interferes with its rights of expression and free speech; that the restriction on signs constitutes improper aesthetic regula-

tion; and that the 32 square foot limitation on advertising and business signs in the C–S zone while permitting 160 square foot signs in the C–H zone (commercial highway) is arbitrary, unreasonable, and discriminatory.

Atlantic's stated concern underlying its challenge is the presence at the same interchange of two of its direct competitors in the gasoline business. A Gulf station is located at the northeastern corner of the interchange and a Mobil station is located at the southeastern corner, both of which fall also within the C–S zone. The Gulf and Mobil stations have operated at these locations since at least 1965. Atlantic's station was built by a predecessor-in-interest sometime after October 1970. All three competitors have erected various signs for business purposes. Each station has erected signs at the interchange which are 65 feet high and 200 square feet in area. Additionally, each station has smaller free-standing signs located along Leaders Heights Road and near the gasoline pumps. The Mobil and Gulf stations have free-standing signs that exceed the 32 square foot limit. Although some modifications have occurred, the signage at those two stations is substantially the same now as it was in 1965 and has not been expanded.[1] The signs exceeding the limit have remained because they pre-date the current zoning ordinance, and are thus pre-existing nonconforming structures.

In May 1990, the Board rejected Atlantic's challenge and concluded, inter alia, that the Township's stated concerns for traffic safety and aesthetics were proper justification for regulating signs, and that any difference in legal signage between Atlantic's property and the other two service stations in the C–S zone results from the different times that applications were made and changes in ordinance provisions which occurred during that time period. The trial court affirmed the Board and Atlantic appealed to this Court. Issues raised by Atlantic in this appeal concern the

1. Sign sizes were unregulated until the enactment of a 1965 zoning ordinance. Since 1965, the provisions involving signs as relevant to this action have not changed except that the permitted size has been increased from 30 square feet to 32 square feet.

validity of the commercial sign provisions of the Ordinance, and whether Atlantic's property is properly zoned according to the express purposes of the zoning districts contained in the Ordinance.

In zoning appeals, where the trial court took no additional evidence, this Court's scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Hersh v. Zoning Hearing Board of Marlborough Township*, 90 Pa.Commonwealth Ct. 15, 493 A.2d 807 (1985). A strong presumption of validity and constitutionality attaches to any lawfully enacted zoning ordinance and a heavy burden is on the landowner to prove facial invalidity of such ordinance. *G.M.P. Land Co. v. Board of Supervisors of Hegins Township*, 72 Pa.Commonwealth Ct. 591, 457 A.2d 989 (1983). In order to overcome this burden, the landowner must prove that the ordinance is clearly, palpably, and plainly unconstitutional. *Judd v. Zoning Hearing Board of Middletown Township*, 74 Pa.Commonwealth Ct. 535, 460 A.2d 404 (1983).

Atlantic first contends that the Ordinance fails to properly advance the governmental interest in the regulation of on-premises business identification signs. It is well established that signs have long been considered proper subjects of regulation for zoning authorities, with such regulation subject to the requirement that it not be arbitrary or discriminatory and must bear a reasonable relationship to the safety, morals, and welfare of the community. *Judd.* The zoning authority can establish rigorous objective standards in its ordinance for size, placement, materials, or coloration of signs to insure that their offensiveness is minimized as much as possible. *White Advertising Metro, Inc. v. Zoning Hearing Board of Susquehanna Township*, 70 Pa.Commonwealth Ct. 308, 453 A.2d 29 (1982). Signage ordinances utilizing such objective standards shall be upheld where they are reasonably related to the clearly permissible objectives of maintaining the aesthetics of an area and fostering public safety through preventing the distraction of passing motorists. *Judd.*

In this case, the Township's zoning officer testified that the objective of the Ordinance was to enhance public safety because the number, size, and clustering of signs made it difficult to observe all of the messages and is distracting to passing motorists. Concern for aesthetics is also stated in the record. Such concerns are clearly a valid basis for the signage Ordinance.

▊ Atlantic asserts, however, that this stated basis for the Ordinance cannot be a justification of the present enforcement because Atlantic's competitors would not otherwise have been permitted to have larger signs.[2] Such a position misperceives the basic concepts underlying pre-existing nonconforming uses. The continuance of a nonconforming use is permitted to avoid a wrong notwithstanding that the use obstructs a public objective. *Bachman v. Zoning Hearing Board of Bern Township*, 508 Pa. 180, 494 A.2d 1102 (1985). Moreover, it has long been the law of this Commonwealth that municipalities lack the power to compel a change in the nature of an existing lawful use of property. *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Township of Moon*, 526 Pa. 186, 584 A.2d 1372 (1991). The Board noted Atlantic's disadvantage, but properly concluded that it did not have an obligation to make certain that everybody is treated alike when one considers the well-established law regarding prior nonconforming uses. The record is clear that the competitors' signs predate the 1978 adoption of the current Ordinance. Therefore the Board did not err in upholding the validity of the signage restrictions as applied to Atlantic.[3]

2. Atlantic repeatedly states in its brief that its competitors' signs became "larger and larger" over the years. Nothing in the record supports this contention. Indeed, the Board found to the contrary, noting that the signs have remained "substantially the same" as they were in 1965.

3. Atlantic also argues that the Township should make the competitors amortize and remove their signs. Such an effort would likely be invalid on its face because a lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain. *PA Northwestern Distributors.*

■ Atlantic suggests further that the Ordinance is invalid because within the C–S zone shopping centers are treated differently than gas stations because the shopping centers may, by special exception, have larger identification signs. However, the differences in size and scope of these two activities clearly support such distinctions. In *Judd*, this Court upheld a similar ordinance which, within the same zone, allowed larger signs for shopping centers and exceptionally large buildings while requiring smaller signs for office buildings and single uses. Atlantic's argument in this regard thus fails.

■ Atlantic's final contention is that the zone in which its property lies was invalidly zoned C–S and should be zoned C–H.[4] This contention stems from the fact that within the C–H zone the Ordinance allows business identification signs of 160 square feet. Atlantic first alleges that a gas station does not properly conform with the purposes of the C–S district. However, it is not unreasonable or arbitrary for the Township to conclude that a gasoline station/convenience store falls within the stated objective of serving the day-to-day shopping needs of the surrounding residents. Atlantic further alleges that the logical zone for the Leaders Heights interchange is C–H because gasoline stations are specifically listed there as permitted uses, and

---

**4.** Section 108 of the Ordinance provides in part:

5. *SHOPPING COMMERCIAL (C–S):* The purpose of this District is to provide areas for retail shopping. It is: (a) primarily for neighborhood shopping areas which serve the day-to-day shopping needs of the surrounding residents (e.g. drugstore and food store items), and (b) if a need is shown, for community and regional shopping centers.

6. *HEAVY AND HIGHWAY COMMERCIAL (C–H):* The purpose of this District is to provide areas for commercial uses with special location and site requirements and which are not always compatible with residential areas. Permitted in this district are:

a. Commercial uses which have an industrial character due to their operations (e.g. laundries and auto repair shops), but do not have the same location and site requirements as industrial uses (e.g. they may need to be close to an urbanized area and the lot need not be as deep as for industrial uses).

b. Commercial uses which serve the motoring public (e.g. gasoline stations, restaurants, motels, etc.).

because other interchanges in the Township are zoned C–H. Such contentions are insufficient to overcome Atlantic's burden. The record demonstrates that the Leaders Heights interchange is considerably less developed than the four small areas currently zoned C–H. In addition, the C–S zone in question is surrounded by predominantly medium-density residential (RM5) and farming-open space (F–O) zones, thus providing further justification for the Township's decision that the interchange is not a logical location for a C–H zone. Furthermore, the fact that property located elsewhere is zoned other than that of the area in question is of no consequence. *See Oravets Appeal,* 97 Pa.Commonwealth Ct. 210, 509 A.2d 1342 (1986).[5]

Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 22nd day of April, 1992, the Order of the Court of Common Pleas of York County is affirmed.

---

**5.** Atlantic further raises a constitutional issue of First Amendment protection given to commercial speech, citing *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). However, *Central Hudson Gas* and its progeny are not helpful in that they address ordinances in which there was either a total ban imposed on commercial speech or a content-based restriction, neither of which is present here. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Therefore, no further analysis of this issue is necessary.