**J.B. STEVEN, INC., Appellant**

v.

**COUNCIL OF THE BOROUGH OF EDGEWOOD, The Borough of Edgewood, and Peter D. Messina, Manager of the Borough of Edgewood.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1995.

Decided April 19, 1995.

---

Victor R. Delle Donne, for appellant.

Carl W. Brueck, Jr., for appellee.

Before COLINS, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

J.B. Steven, Inc., (JBS), engaged in the outdoor advertising business, has appealed from the order of the Court of Common Pleas of Allegheny County, affirming the decision of the Council of the Borough of Edgewood (Borough), and denying its petition to erect three billboards at two locations in the borough.

The Penn–Lincoln Parkway East, a limited access highway, also known as Interstate Highway 376, traverses about one mile of the Borough, between the Edgewood and Wilkinsburg interchanges. It is the major highway serving the eastern suburbs of the City of Pittsburgh. In January 1993, JBS applied for permits to erect three billboards at two separate sites on opposite sides of the Parkway, about six tenths of a mile apart, referred to as the Edgewood Avenue site, and the Milko site, near the Brinton Road overpass.

At the Milko site JBS proposes to erect two stacked signs, at different elevations on the same pole, facing in opposite directions, each measuring twenty by sixty feet. The upper sign would be about eighty-three feet high and about ninety-seven feet above the grade of the Parkway itself in order to be visible to west bound motorists approaching the Brinton Road overpass.

The Edgewood Avenue site is proposed for a single billboard, measuring fourteen by forty-eight feet and eighty-seven feet high, to be visible to east bound motorists on the Parkway. Both sites are located in a D–6 commercial district. The Borough denied permits because its zoning ordinance made no provision for off-site signs and because structures erected in this district were limited to a maximum height of twenty-five feet. JBS challenged the validity of the ordinance before the Council of the Borough, and hearings were held before the Planning Commission and Council.

■ Council agreed its zoning ordinance was invalid because it excluded off-site signs and amended its ordinance to permit such use. The amended ordinance was not accepted by JBS because it retained the twenty-five feet height limitation and limited the maximum gross surface area of a billboard to 250 square feet. After hearing, the Borough denied the JBS's request to erect the pro-

posed signs because: (1) it would be injurious to the public health, safety and welfare; (2) it violated the preexisting maximum height limitation; and (3) JBS had not complied with subdivision regulations.[1] The trial court affirmed the decision of the Borough Council. We affirm on the ground that there was substantial evidence to support the Borough's finding that the construction of these billboards would be injurious to the public health, safety and welfare.[2]

█ It was the Borough's duty to show that the construction of these billboards would be injurious to the public's health, safety and welfare. *Adams Outdoor Advertising, Ltd. v. Hanover Township Zoning Hearing Board,* 159 Pa.Commonwealth Ct. 372, 633 A.2d 240 (1993). However, even if the zoning ordinance is invalid, approval of the developer's plan is not automatic, but the plan must be reasonable and not injurious to the public's health, safety, and welfare. *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985).

█ The Borough presented the testimony of Mark A. Magliotta, P.E., owner of Trans Associates Engineering Consultants, who has a doctorate in transportation engineering and seventeen years of experience in transportation planning and design. His testimony was deemed credible by the Council. Mr. Magliotta testified that I–376 between the Edgewood and Wilkinsburg interchanges was constructed in the early 1950's when adequate safety features of interstate highways were not fully developed. Traveling inbound on I–376 from the Wilkinsburg interchange, the driver encounters two horizontal curves to the right and then the left with radii significantly short of specified national standards which do not provide adequate curves for the

posted speed. In this section of the highway, the one foot shoulder in the median with a median barrier and a substandard four or ten foot shoulder on the right creates driver hazards in the event of a breakdown or accident. The absence of an inside shoulder compounds the substandard horizontal radius by creating even shorter driver stopping sight distance. The close proximity of the barrier creates driver anxiety and requires greater driver concentration.

The recent accident history of this section of highway according to PennDOT numbered ninety-nine in a three-year period, nearly all being rear end collisions. Mr. Magliotta also reviewed a 1991 study by the Southwest Pennsylvania Regional Planning Commission, which revealed that the Edgewood interchange area was the highest eastbound accident area located on I–376, and that this highway section is a high accident location in comparison to other interstate highways and I–376 itself. An analysis of the parkway for peak periods showed that demand exceeded capacity resulting in breakdown of freeflow conditions. Due to the Squirrel Hill tunnel, vehicle queues often exist from 6 a.m. to 9 a.m., which are safety hazards to inbound drivers and also exist as hazards at times for out bound drivers.

In discussing the impact of billboards on highway safety, Mr. Magliotta concluded that billboards should not be introduced in areas where complex highway operations involve interchanges, complex weaving and merging, as exist on I–376 between the Edgewood and Wilkinsburg interchanges, and that distractions should be minimal where vehicle operations are loaded more heavily than usual. He concluded that the highway in question was a high accident location with numerous rear end collisions due to highway congestion

---

1. Since a land developer, who successfully challenges the validity of a zoning ordinance has two years from the date of approval to comply with subdivision regulations, the alleged failure to comply with such regulations is not a ground for denying relief in this case and will not be considered at this time. Section 916.1(g) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(g).

2. Our scope of review where the trial court takes no additional evidence is whether the governing body, the Borough Council, committed an error of law, or a manifest abuse of discretion, i.e., whether its findings were supported by substantial evidence. *Substantial evidence is such evidence as a reasonable mind might deem adequate to support a conclusion. Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983); Section 1005–A of the MPC, 53 P.S. § 11005–A.

and inadequate stopping sight distance and that outdoor advertising can add to a driver's confusion and should not be placed in complex driving situations as is present on I–376.

On cross-examination, Mr. Magliotta agreed that no studies had demonstrated a direct correlation between the existence of billboards and highway accidents, but that studies had shown there was a direct correlation of less accurate maneuvering of vehicles by drivers in complex highway operations when the distraction of billboards was introduced. (R.R. 394a.) He remained of the opinion that reasonable safety considerations precluded the erection of these billboards on this section of I–376. We hold that the finding of the governing body was supported by this substantial evidence.

In *Atlantic Refining and Marketing Corp. v. Board of Commissioners of York Township*, 147 Pa.Commonwealth Ct. 418, 608 A.2d 592 (1992), Atlantic attacked the validity of the York Township zoning ordinance because it permitted only a thirty-two square foot on-site business identification sign instead of the 119 square foot sign sought by Atlantic and because it allowed its competitors' signs to exceed the permitted size because of their nonconforming use. In denying relief, this Court said:

> Signage ordinances utilizing such objective standards shall be upheld where they are reasonably related to the clearly permissible objectives of maintaining the aesthetics of an area and fostering public safety through preventing the distraction of passing motorists. *Judd* [*v. Zoning Hearing Bd. of Middletown Township* 74 Pa.Commonwealth Ct. 535, 460 A.2d 404 (1983) ]. In this case, the Township's zoning officer testified that the objective of the Ordinance was to enhance public safety because the number, size, and clustering of signs made it difficult to observe all of the messages and is distracting to passing motorists. Concern for aesthetics is also stated in the record. Such concerns are clearly a valid basis for the signage Ordinance.

*Atlantic*, 147 Pa.Commonwealth Ct. at 422–23, 608 A.2d at 594.

In this case we find it was not unreasonable for the governing body to find that the construction of these billboards on this section of I–376 would be injurious to the public health, safety, and welfare.

■ The trial court also upheld the decision of the Borough on the ground that the billboards exceeded the maximum height limitation of twenty-five feet, a preexisting limitation in the zoning ordinance generally applicable to all structures to be erected in the Borough. The Borough argues under *Fernley* that JBS is required to abide by all reasonable building requirements generally applicable to construction proposed by the landowner in a commercial district, including the height of structures. The Borough argues that the twenty-five foot limitation is not unreasonable; that it is feasible for JBS to construct the lower sign at the Milko site at twenty-five feet above the ground and that there are other areas in the Borough where billboards may be erected within the height limitation.

JBS argues that it is entitled to site specific relief in accordance with the plans that it has submitted which are not unreasonable and are in accordance with the advertising industry and state standards. The issue is not without difficulty. However, an examination of the record fails to show that the Borough presented substantial evidence that the construction of the lower sign at the Milko site was economically feasible.

In the case of *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa.Commonwealth Ct. 404, 417, 333 A.2d 239, 247 (1975), this Court said:

> [I]f a court determines that an ordinance is defective because of total prohibition of townhouses, then it would be proper to approve the plan of the landowner subject to all of the other zoning regulations and provisions of the ordinance applicable to residential usage insofar as they are reasonably adaptable to [the proposed plans].

We find no substantial evidence that the twenty-five feet height limitation is reasonably adaptable to the proposed plans. Accordingly, we do not find the twenty-five feet height limitation applicable in this case. However, we affirm the order of the trial

court on the ground that there was substantial evidence for the governing body to find that the erection of these billboards in this section of I–376 would be injurious to the public health, safety and welfare.

### ORDER

NOW, April 19, 1995, the order of the Court of Common Pleas of Allegheny County, dated April 13, 1994, at No. S.A. 2935–1993, which affirmed the decision of the Edgewood Borough Council denying the petition of J.B. Steven, Inc., is affirmed.