INTERSTATE OUTDOOR ADVERTISING, L.P., Appellant

v.

ZONING HEARING BOARD OF WARRINGTON TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 2012.

Decided March 13, 2012.

Charles O. Marte, Jr., Langhorne, for appellant.

William J. Bolla, Doylestown, for appellee.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Interstate Outdoor Advertising, L.P. (Interstate) appeals from an order of the Court of Common Pleas of Bucks County (trial court) affirming the Zoning Hearing Board (Board) of Warrington Township's (Township) finding that the Township Zoning Ordinance's (Ordinance) off-premises advertising sign provisions did not result in a *de facto* exclusion of billboards within the Township. Finding no error of law or abuse of discretion by the Board, we affirm.

Interstate applied for permits to construct a two-sided, 50–foot high, 672 square-foot billboard on each of two lots it leases on Easton Road (Route 611) in the Township's C–2 Commercial District. The Township's Zoning Officer (Zoning Officer) denied Interstate's applications because, pursuant to Section 2210.B of the Ordinance,[1] off premises signs are only permit-

---

1. Section 2210.B(2) of the Ordinance, "Off Premises Signs," provides, in pertinent part:
   (2) Commercial Outdoor Advertising Signs. Only one (1) commercial outdoor advertising sign may be erected per tax map parcel fronting onto a public right-of-way, provided that:
   (a) Signs are in the P–1 or P–2 district
   (b) Setbacks
   (i) Right-of-way. No outdoor advertising sign on [sic] any part thereof shall be erected or maintained within one hundred (100) feet of the future right-of-way of a public street.
   (ii) Side or Rear Yards. No outdoor advertising sign or any part thereof shall be erected or maintained within fifty (50) feet of any side or rear property line, nor within one hundred (100) feet of a residence.
   (c) Other Setbacks
   (i) No such sign shall be erected within five hundred (500) feet of any other such sign or freestanding sign.
   (ii) No such sign shall be located within five hundred (500) feet of any street intersection.
   (iii) No such sign shall be located within ten (10) feet of any building.
   (d) Area and Heights
   (i) No outdoor advertising sign shall be permitted to exceed a maximum area of fifty (50) square feet, including border and trim but excluding supports. A sign having two (2) sides back-to-back or a V-shaped sign with a horizontal angle not

ted in the Planned Industrial One and Two (PI–1 and PI–2) Districts, can be no more than 50 square feet in area and 25 feet in height, and must comply with various setback limitations. Interstate appealed to the Board, arguing that the provisions of Section 2210.B(2) of the Ordinance created a *de facto* exclusion of billboards in the Township and seeking site-specific relief based upon the plans it had submitted.

To demonstrate that the Ordinance resulted in a *de facto* exclusion of billboards, Interstate called several witnesses [2] but its core testimony was from its Chief Operating Officer, Jeffrey Gerber (Gerber), who testified about the purpose of billboards and the size and traffic requirements to make them commercially viable.[3] As to the size of billboards, Gerber testified that the industry-standard size was 14 feet by 48 feet, or 672 square feet, which he stated was the size necessary to convey a message to passing motorists. He elaborated on the need for this size, stating:

> They [Billboards] may just say [a company's name], but will have some type of artwork or something that will enhance that brand name ... [i]t can be enhanced by artwork, it can be enhanced by text, and it varies, depending upon what the advertiser wants ... it's all part of a message that is much different

than what an on-premise sign can be, hence, the need for the size.

(February 3, 2009 Hearing Transcript at 61–62). Gerber went on to explain that on-premises signs can be smaller because "[t]he purpose of an on-premise sign is site identification. It's logo recognition; it's name recognition. Its purpose is not to convey a message." *Id.* at 32–33. With respect to the Ordinance's height restriction, Gerber testified that a maximum height of 25 feet would greatly diminish the visibility of billboards to passing motorists. Given the need for size and height, Gerber opined that the Ordinance's area and height restrictions would preclude an off-premises sign from effectively functioning as a billboard. He further stated that, even if it were possible to convey a commercial message on a sign of that size, the Ordinance's setback requirements would render such a sign unusable. *Id.* at 34.

In opposition, the Township presented the testimony of Victor DePallo (DePallo), a licensed landscape architect and land use planner whose company had been hired by the Township to conduct a study of Route 611. DePallo testified that, based upon that study, he made the recommendation that off-premises outdoor advertising signs should not be located along Route 611.

---

greater than ninety (90) degrees, is permitted one (1) on each side or a total maximum area of one hundred (100) square feet.
(ii) No outdoor advertising shall exceed twenty-five (25) feet in height.

**2.** Robert Haag, a professional land surveyor, testified that he had never worked with a company that constructed off-premises commercial outdoor advertising signs of less than 50 square feet in area or 25 feet in height. Patrick Kissinger (Kissinger), Interstate's Director of Leasing, testified that the Ordinance's setback provisions would restrict the construction of an outdoor advertising sign to only one potential location in the entire

Township, on Lower State Road in a PI–2 District. He also testified that based on his calculations, Lower State Road had a traffic count of approximately 4,000 cars per day, as compared to a daily traffic count of 38,000 cars on Route 611, the main traffic corridor in the Township. However, because the Board struck three of the setback requirements contained in the Ordinance, Kissinger's testimony regarding the restriction on the possible location of billboards is no longer relevant.

**3.** Gerber testified that a minimum daily traffic count of 15,000 cars is necessary to make the construction of a billboard feasible. (February 3, 2009 Hearing Transcript at 70–71).

DePallo stated that there were two primary reasons for his recommendation:

The first being just the size of the traditional billboard is too large for the coordinated or intimate style of signage that we saw being developed along the corridor. The second is the potential for a safety concern by the varying sizes, locations of the sign along the corridor.... [I]t's my opinion that when you have signage that is at varying heights and setbacks, et cetera, that it could become a distraction to a driver and thereby with that distraction could pose a safety hazard.

(February 10, 2009 Hearing Transcript at 15–16). DePallo opined that the Ordinance's area, height and setback requirements for off-premises outdoor advertising signs were reasonable, based on his review of other ordinances as well as his professional background. With regard to the sign dimensions proposed by Interstate, DePallo stated that they seemed large, explaining:

I think the size of the signage can be directly proportional to its visibility along the Corridor where it has been shown and I have seen 50 square foot signs set back 100 feet are very readable, therefore it's my opinion 672 square feet, while bigger, isn't necessarily better.

*Id.* at 20. After examining a computer-generated depiction of Interstate's proposed billboard, DePallo opined that the billboard seemed "out of scale, very large and very high ... and an example of how the size and the location of the sign could potentially be a distraction to a driver, and therefore, a safety concern." *Id.* at 21–22. DePallo also disagreed with Gerber's distinction between on-premises and off-

premises advertising signs, stating that the purpose of all signs is to convey a message.

The Township also presented photographs of three off-premises commercial advertising signs located in the Township. One of the signs identified a dentistry practice; the other two signs (Holbert's signs) contained identical advertisements for Holbert's, an automobile dealership. The Holbert's signs included the business's name, the names and logos of three automobile manufacturers, directions to the business, the business's telephone number and website, and the text "Enjoy the Ride." (Reproduced Record at 496a–497a). DePallo testified that the Holbert's signs had an area of approximately 50 square feet. The Township also introduced photographs taken by the Zoning Officer of several off-premises outdoor advertising signs located throughout Bucks County that were smaller than the ones proposed by Interstate. In response to the Township's evidence of these signs, Interstate produced the records of permits for the signs, which indicated that the signs had been in place since at least 1974, and argued they were irrelevant with respect to this matter.

The Board granted Interstate partial relief by striking three of the Ordinance's setback requirements because these sections together "could create a 'defacto' [sic] exclusion of off-site commercial signs" in the Township.[4] However, it found that Interstate did not establish that the 50 square-foot and 25–foot height limitation resulted in a *de facto* exclusion of billboards because it failed to prove that there is an industry standard for billboard size that requires the use of 14 foot by 48–foot

4. The Board struck Sections 2210.B(2)(b)(i), 2210.B(2)(c)(i), and 2210.B(2)(c)(ii) of the Ordinance.

billboards on all roadways. The Board noted that the evidence established that there existed billboards smaller than those proposed by Interstate, including the Holbert's signs that conformed to the Ordinance's requirements and effectively identified an off-site business. The Board also found that the size of the billboards requested by Interstate was excessive for the proposed locations because the signs would be substantially larger than the surrounding structures and, given the nature of the traffic patterns on Route 611, a large sign would not be necessary to convey a message to passing motorists. (Finding of Fact No. 81).

The Board also did not accept Interstate's contention that the construction of billboards in the PI–1 or PI–2 Districts is not economically feasible, noting that the construction of smaller signs would cost significantly less than the ones proposed by Interstate and, thus, the estimated profitability of the signs would change. (Finding of Fact No. 83). Furthermore, the Board determined that the traffic counts provided by Interstate conflicted with official PennDOT traffic counts. (Finding of Fact No. 66). Interstate appealed to the trial court, which also found that, based on the findings of the Board, Interstate failed to establish that the Ordinance created a *de facto* exclusion of all billboards from the Township. This appeal followed.[5]

On appeal, Interstate contends that the Board erred in finding that the Ordinance's height and area restrictions did not result in a *de facto* exclusion of billboards because it proved by clear and convincing evidence that a 50 square-foot billboard with a 25-foot height limitation located on a road with a low traffic count cannot effectively convey an advertising message to the motoring public. It also argues that a *de facto* exclusion is demonstrated by its evidence that no billboards exist in any of the five PI–1 or PI–2 Districts and no billboards smaller than 672 square feet have been built in Bucks County since the 1970s. The Board, however, contends that Interstate failed to overcome the presumption of constitutionality because it failed to establish that signs less than 672 feet are not sufficient to convey an advertising message or that billboards could not be constructed in the PI–1 and PI–2 Districts.

Zoning ordinances in Pennsylvania enjoy a presumption of constitutionality and validity, and the party challenging one bears a heavy burden of proving otherwise. *Macioce v. Zoning Hearing Board of the Borough of Baldwin*, 850 A.2d 882, 887 (Pa.Cmwlth.2004). In order to overcome this presumption of constitutionality, the challenger must demonstrate that the ordinance totally excludes an otherwise legitimate use. Unless the challenger demonstrates that the ordinance in question completely or effectively excludes a legitimate use, the challenger has failed to carry its burden. *Id.* To prove total or effective exclusion of a permitted use, the challenger can show that the ordinance is either *de jure* or *de facto* exclusionary. *Id.* at 888. A *de jure* exclusion exists where an ordinance, on its face, totally bans a legitimate use. A *de facto* exclusion exists

---

5. "[O]ur standard of review in a zoning case, where the court of common pleas has taken no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. An abuse of discretion will be found only if the zoning board's findings are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Lamar Advertising of Penn, LLC v. Zoning Hearing Board of the Borough of Deer Lake*, 915 A.2d 705, 709 n. 9 (Pa.Cmwlth.2007).

where an ordinance permits a use on its face, but when applied, acts to prohibit the use throughout the municipality. *Id.* The Supreme Court recently described the two-step analysis that courts must follow in deciding these types of cases:

> [W]e first consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes billboards as a use. If we determine that the challenger has done so, we then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality or welfare.

*Township of Exeter v. Zoning Hearing Board of Exeter Township,* 599 Pa. 568, 582, 962 A.2d 653, 661 (2009).

Municipalities, under their police powers, have a significant interest in regulating billboards and other advertising because they are seen from the street and can "distract drivers," constitute "traffic hazards," and the effects of billboards on development can harm an area. *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.,* 417 Pa. 397, 207 A.2d 890 (1965); *Spriggs v. South Strabane Twp. Zoning Hearing Bd.,* 786 A.2d 333 (Pa.Cmwlth.2001); *Fifth Avenue Coach v. City of New York,* 221 U.S. 467, 31 S.Ct. 709, 55 L.Ed. 815 (1911) (city law forbidding advertising trucks in Manhattan did not violate coach company's property rights; those rights were defined by New York state corporate law, which said the company could use the public streets for transportation but not general advertising for hire).

Usually, a municipality chooses to regulate signs under its zoning ordinance. The zoning authority can establish rigorous objective standards in its ordinance for size, placement, materials or coloration of signs to insure that their offensiveness is minimized as much as possible. *Atlantic Refining and Marketing Corporation v. Board of Commissioners of York Township,* 147 Pa.Cmwlth. 418, 608 A.2d 592, 594 (1992). Signage ordinances utilizing these objective standards will be upheld where they are reasonably related to the clearly permissible objectives of maintaining the aesthetics of an area and fostering public safety through preventing the distraction of passing motorists. *Id.* A municipality can also prohibit flashing "running lights" on signs as being intrusive on neighboring property owners' enjoyment of their property. However, a blanket prohibition on billboards without justification cannot withstand a constitutional challenge because billboards are not objectionable *per se. Township of Exeter,* 599 Pa. at 581, 962 A.2d at 660. *See also Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 508, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). ("If [a] city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems that they create is to prohibit them.")

Our Supreme Court has recently addressed whether restrictions similar to this one constitute *de facto* exclusions of billboards but based on different factual findings. *Township of Exeter* involved a nearly identical factual scenario as the one here. In that case, Exeter Township's zoning ordinance restricted the size of commercial outdoor advertising signs to 25 square feet. An outdoor advertising company (applicant) applied to erect billboards on U.S. Route 422 in the township, and after its applications were denied, it challenged the ordinance as *de facto* exclusionary. The applicant argued that the zoning ordinance effectively banned billboards as a form of outdoor advertising in the town-

ship because national advertising industry standards set billboard size at either 300 or 672 square feet. *Township of Exeter*, 599 Pa. at 573–74, 962 A.2d at 656. It also argued that a 25 square-foot sign was not an acceptable standard in the outdoor advertising industry. *Id.* The township supported its argument that the restriction did not create a *de facto* exclusion of advertising signs by producing evidence of several 25 square-foot signs located on its roadways. The township also provided testimony that the regulation addressed the township's concerns for aesthetics and traffic safety on U.S. Route 422. *Id.*

On the evidence presented, the zoning board found that the applicant met its burden to prove that the zoning ordinance resulted in a *de facto* exclusion of billboards because, *inter alia*, the industry standard for minimum billboard size was 300 square feet; the maximum reasonable size for billboards in the township was 300 square feet; and the township's zoning ordinance excluded billboards as a permitted use in the township. The case ultimately reached the Supreme Court, which, based "on this record," *Id.*, 599 Pa. at 585, 962 A.2d at 663, upheld the Board's determination that the 25 square-foot limitation on signs amounted to a *de facto* exclusion of billboards in Exeter Township. The Court explained that:

> [T]he record does not support the notion that a restriction on the size of signs must meet industry standards to pass constitutional muster. That being said, however, proof of industry size standards was certainly probative of whether the restriction here was exclusionary, and the Commonwealth Court majority improperly downplayed that evidence. [Applicant's] proof had bearing on what square footage allows a sign to fulfill a billboard's purpose and provided a concrete frame of reference against which to evaluate the functionality, or lack

thereof, of a 25–square–foot sign as a billboard. In this same vein, the fact that the Township produced evidence of a few 25–square–foot signs on Township roadways did not defeat [Applicant's] claim. The existence of such signs did not prove their effectiveness at communicating the intended message; and, as the evidence revealed, these small signs certainly did not function as billboards.

*Id.*, 599 Pa. at 584–85, 962 A.2d at 662–63. The question here, then, is whether, on the record before us, there is substantial evidence to support the Board's finding that the Ordinance, as amended, does not constitute a *de facto* exclusion of billboards due to height and area restrictions.

In *Township of Exeter*, the township merely introduced evidence of conforming signs throughout the municipality to rebut the applicant's testimony about industry standards. As the Court noted, the mere existence of these signs, without proof of their effectiveness at communicating an advertising message, was not sufficient to defeat the applicant's claim. However, the record before us contains more evidence than the mere existence of other conforming signs in the Township.

To counter that the industry standard of 672 square feet and 50 feet in height was necessary to effectively communicate the message, the Board accepted DePallo's testimony that a 50 square-foot billboard, 25 feet in height, effectively conveys an advertising message. DePallo gave as an example the Holbert's signs, which meet the Ordinance's height and area requirements and function effectively as billboards because they do not simply identify a business but also convey a message by demonstrating what the business sells and containing company logos, directions to the business and the business's telephone number and website. (February 10, 2009

Hearing Transcript at 56–58). He also identified the signs as off-premises signs. The photographs of the Holbert's signs introduced by the Township further reinforce the position that the signs convey a message and do not simply identify a business. The photographs show that the signs have text and graphics that help to enhance their message. All of this evidence, which the Board accepted, directly contradicts Gerber's testimony that off-premises signs require a larger area than 50 square feet to effectively communicate an advertising message and constitutes substantial evidence to support the Board's decision.

The Board also found that smaller conforming signs located throughout Bucks County had been in existence for several decades, which serves as further proof that they are effective in communicating an advertising message. Because the record contains substantial evidence that a 50 square-foot sign can clearly convey a message to passing motorists in the Township and, therefore, function as a billboard, the Board was justified in making its determination.

■ The Board also rejected Interstate's argument that the construction of billboards in the permitted zoning districts is economically infeasible because insufficient traffic travels on those roads to make the billboards economically practical. Economic loss refers to the inability to glean optimal financial gain, whereas economic infeasibility relates to the effect an ordinance has on a developer who was barred from development due to an ordinance's restrictions. *Stahl v. Upper Southampton Township Zoning Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960, 967 (1992). The location of billboards in a municipality is determined by overall planning that takes into consideration surrounding uses, not the economics of the billboard industry. In any event, the Board and trial court concluded that Interstate suffered only economic loss as a result of the Ordinance. As the trial court explained in its opinion:

> Interstate submitted evidence that erecting and maintaining a non-conforming 672 square-foot sign in the PI–1 or PI–2 Districts would not be as profitable as locating the sign along Route 611 in the C–2 District. However, as the [Board] found, Interstate's construction costs of a conforming fifty (50) foot sign would be significantly less and the estimated profitability would change.... Interstate did not present any evidence of the economic practicability of erecting a fifty (50) square foot sign in the PI–1 or PI–2 Districts.

(September 8, 2011 Trial Court Opinion at 8). We agree with the trial court that the Board correctly found that Interstate failed to meet its burden to prove that erecting a conforming billboard was economically impractical.

■ Interstate also contends that while billboards are permitted in PI–1 or PI–2 Districts, the fact that no off-premises advertising signs have been constructed in those districts establishes that there is *de facto* exclusion of billboards. However, given the now struck setback requirements, that evidence is not probative because it is impossible to discern whether the lack of billboards is the result of the challenged restrictions, the setback requirements that the Board struck, or property owners in those districts who do not want to lease their property for billboards or to use it for other purposes.

Based on the record before us and the findings of the Board, there is substantial evidence to support the Board's decision and, accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 13th day of March, 2012, the Order of the Court of Common Pleas of Bucks County, dated June 30, 2011, at No. 2009–09086, is affirmed.