J-A22034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PETER D. MELCHIORRE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| 422 DEVELOPMENT, INC., PHOENIXVILLE TOWN CENTER, LP, LONGVIEW DEVELOPMENT, LP, GIANT LANDLORD, LP, SEARS ROEBUCK & CO., K MARK CORPORATION, GIANT FOOD STORES, INC., HARDWARE LANDLORD GP, LLC AND PHOENIXVILLE BOROUGH, | |
| Appellees | No. 3768 EDA 2016 |

Appeal from the Order Entered November 22, 2016
in the Court of Common Pleas of Chester County
Civil Division at No.: 1999-00693-IR

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED NOVEMBER 14, 2017**

Appellant, Peter D. Melchiorre, appeals from the denial of his petition to enforce a 1999 settlement (and later implementing orders) against Appellees, 422 Development, Inc., Phoenixville Town Center, LP, Longview Development, LP, Giant Landlord, LP, Sears Roebuck & Co., K Mart Corporation, Giant Food

_____

[*] Retired Senior Judge assigned to the Superior Court.

Stores, Inc., Hardware Landlord GP, LLC, and Phoenixville Borough.[1] Appellees have ownership and various related interests in the shopping center which adjoins Appellant's business property. Appellant has an easement across the shopping center property. He asserts that a change of use of the shopping center entitles him to a reversion to an "original" easement from fifty years ago, which he prefers to more recent easements created in a series of negotiated settlements. He also seeks discovery and a hearing on his claim of damage to the easement by Appellees' dumping of fly ash and other contaminating substances. We affirm the order denying a reversion to the original easement. We remand to the trial court solely to allow Appellant another opportunity to take depositions on his claim of dumping and consequent damage to the easement. We decline to order a hearing on the dumping damage claims.

The underlying facts are not in substantial dispute. Appellant is a general contractor who also operates a business in Phoenixville which prepares and sells top soil and potting soil. In 1975, he bought several parcels of land from the Phoenixville Industrial Authority. The Authority had reserved easement rights for the property in 1964.

_____

[1] The order was dated on November 21, but filed the following day, November 22, 2016. We have amended the caption accordingly. Counsel for Phoenixville borough filed a letter joining the other Appellees' brief.

The easement provided access over land that would later become the shopping center in this case. These purchases preceded the shopping center by decades. The Phoenixville Town Center Shopping Center was not proposed until the 1990's.

In 1999, Appellant brought suit, claiming his right to preserve the then existing easement, which would have prevented the building of the shopping center. The parties eventually compromised by providing Appellant with an alternate easement across the shopping center property which allowed access to his business, but still allowed the shopping center to be built. The parties could not agree on common language for a written settlement. So then-counsel read the oral terms of the negotiated settlement into the record. (**See** N.T. Hearing, 10/28/99, at 2-15).

Notably, the parties agreed that if "**the shopping center use is discontinued**," the easement would revert to a 50 foot width (which appears to correspond to the "original" easement).[2] (**Id.** at 3) (emphasis added). In addition to providing $20,000 for the cost of paving, Appellees also agreed to pay Appellant $10,000 in settlement for the relocation of his easement. (**See id.** at 5; **see also id.** at 4; Appellees' Brief, at 5).

_____

[2] The parties similarly agreed that the easement would revert on other conditions, _e.g._, the failure to obtain necessary permits. (**See** N.T. Hearing, 10/28/99, at 15).

The roadway for the relocated easement was not to exceed twenty-seven feet in width. (**See** N.T. Hearing, 10/28/99, at 4). The trial court retained jurisdiction to enforce the terms of the settlement. (**See id.** at 6).

Over the years, there were additional ongoing disputes over the width of the easement, the proper angle of the easement, (so trucks could negotiate turns), whether the enlargement of an existing store encroached on the easement (the court decided it did not), *etc.*

The trial court's 2009 order also provided that if the parties did not agree on the terms of the easement documentation, the court would "determine the content of the said documentation after consultation with the parties." (Order 6/30/09, at 3 n.2).[3]

In 2011 (after legal notice was published in 2009) an Eckerd drug store in the shopping center was demolished. In 2012, the drug store was replaced by a gasoline service station operated by Giant Foods, an anchor tenant of the shopping center.

Of special note for the consideration of this appeal, in the settlement order of 2012, (as in the 1999 settlement), prior easements were extinguished subject to a right of reversion if Appellees' "property **ceases to be used as a shopping center** or the easement as set forth herein is not available for

_____

[3] There is no dispute that the parties could not agree on common language for a written settlement agreement. (**See id.**).

the use of [Appellant] . . . for any reason other than the voluntary act of [Appellant] . . . ." (Order, 3/15/12, at 3) (emphasis added).

In June of 2016, Appellant filed a petition to enforce the orders of 2009 and 2012. (*See* Petition to Enforce the Orders of the Honorable Robert Shenkin dated June 30, 2009, and March 13, 2012, Requiring the Reversion to Peter D. Melchiorre of his Original Easement Rights Due to the Change of Use of the Shopping Center," 6/30/16) (unnecessary capitalization omitted).

Citing Commonwealth Court zoning cases, not binding on this Court, Appellant argued in the petition (as in this appeal) that the construction of a service station changed the use of the shopping center to the effect that it "is not encompassed within the standard customer use of the term shopping center." (*Id.* at unnumbered page 4, Paragraph 8; *see also id.* at unnumbered pages 3-4).

The trial court denied the petition, reasoning that "shopping center" should be construed in its "ordinary definition," such that the shopping center was still a shopping center even after a gas station was built on it, and no change in use entitling Appellant to a reversion of easement had occurred. (Order, 11/22/16, at 1 n.1; *see also* Trial Court Opinion, 1/12/17, at 2). Appellant timely appealed.[4]

---

[4] Appellant timely filed a court-ordered statement of errors, on December 21, 2016. The trial court filed its opinion on January 12, 2017. *See* Pa.R.A.P. 1925.

On appeal, Appellant presents multiple claims which raise at least seven issues, arguably eight, nominally framed as three "questions involved." ***See*** Pa.R.A.P. 2116.

> 1. Did the [trial court] err in dismissing the Petition to Enforce the Settlement and Orders of the Court that the easement of [Appellant] would revert back to its original location once the shopping center changed its use to allow a gas station? Did [the trial court] err in finding the use of the shopping center was not changed by the addition of the gas station? Did [the trial court] ignore the language of [its] orders and settlement that the original easement reverts back to [Appellant] if the property ceased to be used solely as a shopping center? Did [the trial court] ignore the agreement and prior orders were conditional upon the property being used only as a shopping center, and the agreements were broken with the additional use of the gas station?
>
> 2. Did [the trial court] err in ignoring the second issue raised in the Petition to Enforce and err in not holding a hearing when [Appellant] alleged the Appellees improperly filled the adjoining flood plan [sic] and wetlands with fly ash and illegal waste, causing severe flooding, which made [Appellant's] easement unusable? Did [the trial court] ignore the language in the settlement agreement and orders that if the Appellees rendered the easement unusable, [Appellant] would have the right to the easement that existed prior to October 28, 1999?
>
> 3. Did [the trial court] err in not allowing a hearing on these issues and instead deciding the case on the legal papers and/or should this Court remand this case for depositions since [Appellant's counsel] never received the [trial court's] Order allowing depositions so testimony could have been presented on the issue of the destruction of the easement by the Appellees?

(Appellant's Brief, at 4-5).

Preliminarily, we observe that many of these issues overlap. Some are purely redundant. We note that counsel for Appellant raised twenty issues in

the Statement of Errors. The trial court responded to Appellant's twenty issue statement of errors by grouping the claims into three broad categories.

In this appeal, on independent review we find that, shorn of duplications, repetitions and redundancies, Appellant raises three identifiable, discrete issues for our review on appeal: 1) the purported right of reversion to the "original" easement based on change of use from a shopping center; 2) the opportunity to take depositions on his claim of damage to the easement (coupled with a denial of receipt of the order granting the original extension); and 3) the right to a hearing on his claim of damage to the easement. We will address Appellant's developed issues.[5] We decline to address Appellant's undeveloped, overlapping issues. *See* Pa.R.A.P. 2119(a).

We first address Appellant's principal issue, the claim of reversion to a different easement by change of use.

Our scope and standard of review for the trial court's interpretation of an easement is well-established.

> When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether

---

[5] We note that by conflating multiple issues, and then addressing all issues generally under only three headings, Appellant's brief fails to comply with Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part−in distinctive type or in type distinctively displayed−the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Pa.R.A.P. 2119(a).

an error of law was committed or whether the trial court abused its discretion[.]

> The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence we may not substitute our judgment for that of the trial court.
>
> Moreover, the findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. **When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.**

*PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 110 (Pa. Super. 2001), *appeal denied*, 796 A.2d 984 (Pa. 2002) (citations omitted) (emphasis added).

Our standard of review for settlement agreements is also well-settled.

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.
>
> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to reevaluate settlement agreements, the judicial policies favoring settlements would be deemed useless.

Settlement agreements are enforced according to principles of contract law.

\*   \*   \*

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing.

**Step Plan Servs., Inc. v. Koresko**, 12 A.3d 401, 408–09 (Pa. Super. 2010)

(internal citations and quotation marks omitted).

Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy.

Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." **Hutchison v. Sunbeam Coal Co.,** 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." **Madison Constr. Co. v. Harleysville Mut. Ins. Co.,** 557 Pa. 595, 606, 735 A.2d 100, 106 (1999).

**Allstate Fire & Cas. Ins. Co. v. Hymes**, 29 A.3d 1169, 1172 (Pa. Super. 2011), *appeal denied*, 46 A.3d 715 (Pa. 2012) (some citations omitted).

Here, Appellant maintains that the shopping center is no longer "used solely as a shopping center" by virtue of the establishment of a gasoline service station. (Appellant's Brief, at 26). In support of this claim Appellant principally cites two Commonwealth Court zoning cases, **Campbell v. Zoning**

*Hearing Bd. of Plymouth Twp.*, 310 A.2d 444 (Pa. Cmwlth. 1973); and *Atl. Ref. & Mktg. Corp. v. Bd. of Comm'rs of York Twp.*, 608 A.2d 592 (Pa. Cmwlth. 1992). (*See* Appellant's Brief, at 27, 30). Appellant's reliance is misplaced.

In the first place, as already noted, we are not bound by decisions of the Commonwealth Court. *See Stackhouse v. Stackhouse*, 862 A.2d 102, 105 (Pa. Super. 2004); *Bell v. Ferraro*, 849 A.2d 1233, 1234 n.2 (Pa. Super. 2004).

Moreover, neither case would apply. Both of these cases are zoning cases, not easement cases.[6] Zoning is not at issue in this appeal. Furthermore, neither case addresses the legal consequence of a compromise easement, or what conditions under a settlement require the reversion to a prior easement. Specifically, neither case mentions, let alone holds, the proposition that Appellant asserts, *viz.*, that the addition of a gasoline service station to a shopping center changes the identity of what used to be a shopping center, to something other than a shopping center, for purposes of triggering the substitution of an easement.

---

[6] *Campbell* affirmed the denial of a zoning variance for use as a service station where the oil company applicant leased (conditionally) with knowledge of the zoning restriction and failed in its burden to establish unnecessary hardship. *See Campbell*, *supra* at 447. *Atlantic Refining* concluded that a gasoline station convenience store was properly zoned "C-S" (commercial/shopping district), even though other area service stations were zoned "C-H" (commercial/highway). *See Atlantic Refining*, *supra* at 595.

Appellant attempts to blunt the illogic of this argument, counter-intuitive at best, by adding the qualifier "solely." ("[Appellant's understanding of the agreement is that the easement is contingent on the property being used **solely** as a shopping center."). (Appellant's Brief, at 26) (emphasis added). It does not help his case.

First, on independent review, none of the constituent settlement documents includes the qualifier "solely," or an equivalent, such as "exclusively" or "only," and Appellant points us to none. (***See*** Appellees' Brief, at 11, 14).

What the documents do say is that if the shopping center ceases to be used as a shopping center, then the easement reverts to the "original" reserved easement.

However, Appellant himself concedes that the property is still a shopping center. (***See*** Appellant's Brief, at 27 ("**obviously there are still shopping center buildings** but there is also a gas station, which has a different use."); ***see also id.*** at 33 ("the use of the shopping center has changed even though aspects of it **are still being used as a shopping center**.") (emphases added)). Appellant's first argument has numerous weaknesses and defects. But its fatal flaw is the failure to establish that the change of use of one retail establishment is a change of use of the entire shopping center.

The plain meaning of the exception is that if the entire shopping center ceases operation, Appellant would get his original easement back. Nothing

in the language of the orders justifies the idiosyncratic interpretation that any change in the operation of any individual tenant creates a change of use for the entire shopping center.

The trial court decided that under the "ordinary definition," the shopping center was still a shopping center. (Order, 11/22/16, at 1 n.1). "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." **Step Plan Servs., Inc.**, **supra** at 408 (citation omitted). Here, the trial court properly gave "shopping center" its plain meaning. We accept the trial court's finding of fact, and we decline to disturb the court's correct conclusion.

Additionally, the incidental fact that operation of a service station may incur different or additional zoning restrictions does not change the character of the entire shopping center any more than the establishment of any other specially-regulated enterprise (*e.g.*, a pharmacy, or a walk-in medical office) would.

We would add, in the exercise of our plenary review, that the real issue is not whether there was an incidental change of use. (**See** Appellant's Brief, at 22). The controlling question is whether there was a **cessation** of use as **a shopping center**. (**See** Order, 3/15/12, at 3). Even Appellant concedes there was not.

The plain meaning of "shopping center" controls. No triggering cessation of use as a shopping center occurred.[7] No reversion to an original easement is justified or warranted. Viewing the evidence in the light most favorable to Appellees as verdict winners, as we must under our standard of review, we conclude the findings of the trial judge are more than amply supported by the record. **See PARC Holdings**, **supra** at 110. Appellant's first claim lacks merit.

We address Appellant's remaining two claims together because they overlap and argue the same issues. Both claim the right to a hearing on Appellant's dumping claims. (**See** Appellant's Brief, *passim*). We disagree.

Preliminarily, we address Appellant's claim for additional discovery time. On August 31, 2016, counsel for Appellant requested an additional thirty days to take depositions, citing other trial obligations and vacation schedules. (**See** Appellant's Brief, at 15, 44; **see also** Motion of the Plaintiff, Peter D. Melchiorre, to Extend the Time for Depositions, 8/31/16).

On September 20, 2016, the trial court granted a thirty-day extension, until October 21, 2016. However, counsel for Appellant denies receipt of the trial court's grant. (**See** Appellant's Brief, at 45). Counsel provides copies of correspondence to third parties consistent with his claim that he was unaware

_____

[7] Moreover, Appellant virtually concedes that the construction and operation of the gas station did not interfere with the use and enjoyment of his easement. (**See** Appellant's Brief, at 34).

an extension had been granted. He further explains that he was not aware of the grant of the extension until he read the Rule 1925(a) trial court opinion. (**See id.**). As an alternative to his request for a hearing, Appellant requests remand for depositions. (**See id.** at 47).

Appellees argue that Appellant (or his counsel) failed to avail themselves of prior opportunities to take depositions. They recite perceived technical deficiencies in the proffered reports, and note that counsel failed to provide a sworn statement of non-receipt. (**See** Appellees' Brief, at 21-25).

We remain mindful that this is an error-correcting Court, not a fact-finding court. Appellate courts are not charged, nor particularly well-equipped, to make fact-specific determinations on a cold record.

Therefore, here, rather than try to sort out the conflicting factual claims made by both parties, we conclude the best way to expedite disposition of this appeal will be to remand to the trial court with direction to reinstate its previous grant of a thirty-day extension for Appellant to take the depositions as previously requested. **See** Pennsylvania Rule of Appellate Procedure 105:

> **(a) Liberal construction and modification of rules.** These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision, or for other good cause shown, an appellate court may, except as otherwise provided in Subdivision (b) of this rule, disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

**(b) Enlargement of time.** An appellate court for good cause shown may upon application enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time, but the court may not enlarge the time for filing a notice of appeal, a petition for allowance of appeal, a petition for permission to appeal, or a petition for review.

Pa.R.A.P. 105 (a)-(b).

We emphasize that the remand we mandate today is for the **sole** purpose of permitting the extension of the discovery period as previously granted. The thirty-day period shall not be further extended. Nor may any other issues be considered.

Next, we consider Appellant's multiple demands for a hearing. (**See** Appellant's Brief, at 40, 41, 43, 46, 47). He claims he is entitled to a hearing based on disputed issues of fact. We disagree.

Appellant incorrectly (and inconsistently) states, without citation to support, that "[n]o hearing is allowed" on a petition pursuant to Pa.R.C.P. 206.7. (Appellant's Brief, at 14).

We read the rule to leave the decision on whether to hold a hearing or not to the discretion of the trial court. **See** Pa.R.C.P. 206.7(c), which provides in pertinent part: "If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, **or such other discovery as the court allows**, within the time set forth in the order of the court." (emphasis added).

"An abuse of discretion occurs if there was an error of law or the judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Silver v. Thompson*, 26 A.3d 514, 516 (Pa. Super. 2011) (citation omitted). We conclude Appellant has failed to establish any abuse of discretion.

Appellant insists the trial court's failure to allow a hearing was "more than an abuse of discretion[.]" (Appellant's Brief, at 41). However, aside from generic, conclusory claims of violation of the preceding easement settlement agreements, Appellant fails to identify with any meaningful degree of specificity what disputed facts would have required a hearing.

We note that, "[i]t is not the duty of the Superior Court to scour the record and act as the appellant's counsel[;]" therefore we decline to speculate what factual issues Appellant conceives to be disputed. *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa. Super. 2005) (citation omitted). Accordingly, this argument is waived. *See* Pa.R.A.P. 2119(c).

Moreover, Appellant's claim to a hearing would not merit relief.

Even if we were to assume for the sake of argument that Appellant identified genuine disputes of material fact, he fails to establish abuse of discretion by the trial court for not holding a hearing based on partiality, prejudice, bias, or ill-will. The trial court plainly possessed the discretion to determine whether a hearing on factual disputes was necessary to decide the issues.

Accordingly, we vacate the verdict of the trial court, but only in part. We affirm the order denying reversion to the original easement. We remand to the trial court for the sole purpose of permitting Appellant to take depositions during a thirty-day period beginning with the filing date of this memorandum. The trial court may, if it chooses, review its decision in the light of Appellant's depositions.[8] We decline to order a hearing.

Order affirmed in part and vacated in part. Case remanded. Panel jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/2017

---

[8] If, after reviewing the depositions, the trial court decides that a hearing is necessary or appropriate, the court in the exercise of its discretion may, but need not, order a hearing.