IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| IN RE: APPEAL OF THE APRIL 24, 2018 DECISION OF THE CHARLESTOWN TOWNSHIP ZONING HEARING BOARD DENYING THE CHALLENGE OF CHARLESTOWN OUTDOOR, LLC TO THE VALIDITY OF THE ZONING ORDINANCE'S EXCLUSION OF OUTDOOR ADVERTISING BILLBOARDS | : : : : : : : : : : | No. 80 MAP 2021 Appeal from the Order of Commonwealth Court at No. 826 CD 2019 dated January 21, 2021, reconsideration denied March 15, 2021, Affirming the Order of the Chester County Court of Common Pleas, Civil Division, at No. 2018-05282-ZB dated June 13, 2019. |
| APPEAL OF: CHARLESTOWN OUTDOOR, LLC | : : | ARGUED: March 8, 2022 |

# OPINION

**JUSTICE WECHT**                                        **DECIDED: August 16, 2022**

Charlestown Township, a municipality in Chester County, enacted a zoning ordinance that permits outdoor, off-premises advertising signs (otherwise known as billboards) in a particular district. A statewide regulation concerning roadside billboards promulgated by the Pennsylvania Department of Transportation ("PennDOT") has the practical effect of barring that use. Charlestown Outdoor, LLC, ("Outdoor") seeks nonetheless to erect a billboard on property it leases in that zoning district. In pursuit of that objective, Outdoor filed a substantive validity challenge to Charlestown Township's ordinance, asserting that it is *de facto* exclusionary. "In a *de facto* exclusion case, the challenger alleges that an ordinance appears to permit a use, but under such conditions

that the use cannot in fact be accomplished."[1]  Here, it is not the zoning ordinance, but rather the statewide regulation, that precludes the proposed use.  Accordingly, we hold that the challenged zoning ordinance is not *de facto* exclusionary.  We affirm the Commonwealth Court's rejection of Outdoor's validity challenge.

I.    Background

On December 20, 2004, the Board of Supervisors of Charlestown Township (the "Township") enacted Zoning Ordinance 125-2004 ("the Zoning Ordinance").[2]  In addition to numerous other innovations, the Zoning Ordinance established the Business-1 ("B-1") zoning district in an area that had been zoned for limited industrial use.  Before 2004, the Zoning Ordinance's predecessor provision had permitted billboards in that limited industrial use zoning district.  As amended, the Zoning Ordinance allows billboards in this zoning district (now designated B-1), subject to a five-foot setback requirement.[3]  Billboards are not a permitted use anywhere else in the Township.  Like the prior limited industrial use district, the present B-1 zoning district is adjacent to the Pennsylvania Turnpike.[4]

Several years later, in 2011, the Pennsylvania Department of Transportation ("PennDOT") constructed a new traffic interchange in the Township, with on and off ramps

---

[1]    *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009).

[2]    Charlestown Twp. Zoning Ordinance 125-2004.

[3]    The Township's Zoning Ordinance provides that "[o]utdoor advertising billboards shall be located only a minimum of five feet and a maximum of 30 feet from the Turnpike east-west travel lanes right-of-way."  *Id.* § 27-1405.13.B.

[4]    In 2008, the Township adopted the Phoenixville Regional Comprehensive Plan, a multi-municipal comprehensive plan enacted jointly with several other regional municipalities under Article XI of Pennsylvania's Municipalities Planning Code ("MPC"),

connecting Phoenixville Pike to the Turnpike. This brought into play certain statutory and regulatory provisions that were not germane at the time of the Zoning Ordinance's adoption. Specifically, in the Outdoor Advertising Control Act of 1971,[5] the General Assembly established standards for the erection and maintenance of billboards located along interstate and primary road systems throughout the Commonwealth. PennDOT implemented that statute by promulgating regulations governing billboards adjacent to interstate and primary roads. Section 445.4(b)(2)(i) of these regulations prohibits billboards within 500 feet of an interstate interchange.[6] As applied to the Township, construction of the Phoenixville Pike ramp triggered Section 445.4(b)(2)(i), which effectively prohibits billboards anywhere in the B-1 zoning district.

___

including Phoenixville Borough, Schuylkill Township, East Pikeland Township, East Vincent Township, and West Vincent Township. *See* 53 P.S. §§ 11101–11107.

[5]     *See* 36 P.S. §§ 2718.101–2718.115.

[6]     Section 445.4(b)(2)(i) provides:

(b) *Maintenance*. A sign may not be erected or maintained inconsistent with the following criteria:

* * *

(2) *Spacing of signs*. Spacing of signs shall include the following:

(i)     Along the interstate system and limited access highways on the primary system, no two sign structures may be spaced less than 500 feet apart; and outside the boundaries of cities of all classes and boroughs, no structure may be erected adjacent to or within 500 feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.

67 Pa. Code § 445.4(b)(2)(i). As the Township is neither a city nor a borough, it is subject to the 500-foot setback.

Outdoor wishes to construct and maintain a billboard on a parcel that it leases along Phoenixville Pike in the Township ("the Property"). The Property is situated within the B-1 zoning district and borders the Turnpike. Section 445.4(b)(2)(i) of PennDOT's regulations prohibits the erection and maintenance of billboards on the Property due to its proximity to the Turnpike interchange.

On May 1, 2017, Outdoor filed a challenge to the validity of the Township's Zoning Ordinance under Section 916.1(a)(1) of the MPC.[7] Outdoor asserted that the Zoning Ordinance unlawfully *de facto* excludes billboards because, although the Zoning Ordinance permits billboards in the B-1 zoning district subject to the setback requirements of Section 27-1405.13.B, PennDOT's regulation precludes billboards in the entirety of that district. Because of this alleged *de facto* exclusion, Outdoor argued that the Zoning Ordinance was invalid and unconstitutional, and it sought site-specific relief authorizing it to construct a billboard on the Property.[8, 9]

---

[7]     53 P.S. § 10916.1(a)(1) ("A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge . . . to the zoning hearing board. . . .") (footnote omitted).

[8]     Outdoor also alleged that the Zoning Ordinance was *de jure* exclusionary, an allegation that was decided in the Township's favor and that is no longer at issue in this appeal.

[9]     In its validity challenge, Outdoor indicated that, were it successful, the MPC requires site-specific relief. *See* Zoning Challenge at 4 (citing 53 P.S. § 11006-A(c) (empowering a court to "order the described development or use approved" or to "order it approved as to some elements")). Before the Charlestown Township Zoning Hearing Board, Outdoor likewise requested site-specific relief. Br. of Challenger, Zoning Hearing Bd., at 14, 16. The Township asserts that Outdoor failed to request any form of site-specific relief because it did not include proposed plans for such relief, resulting in waiver. Outdoor's obligations with regard to the relief it sought are beyond the scope of this appeal.

Following two hearings, the Charlestown Township Zoning Hearing Board ("the Board") denied Outdoor's challenge. Because the 500-foot prohibition that barred construction of billboards along the Turnpike in the B-1 zoning district was not imposed by the Township, but by PennDOT, the Board held that the Zoning Ordinance was not *de facto* exclusionary.[10]

Outdoor appealed the Board's decision to the Court of Common Pleas. Outdoor argued that the Township has an obligation to provide for billboards as a permitted use in a viable area of the Township and had failed to do so. To the extent that the Zoning Ordinance appeared to permit billboards but failed to provide a zoning district in which that use was permitted, Outdoor argued that it was *de facto* exclusionary.

---

[10] The Board also examined Outdoor's challenge under Section 916.1(h) of the MPC, considering the availability of uses under the zoning ordinances of the municipalities participating in the Phoenixville Regional Planning Commission within a reasonable geographic area. Section 916.1(h) of the MPC provides:

> (h) Where municipalities have adopted a multimunicipal comprehensive plan pursuant to Article XI but have not adopted a joint municipal ordinance pursuant to Article VIII-A and all municipalities participating in the multimunicipal comprehensive plan have adopted and are administering zoning ordinances generally consistent with the provisions of the multimunicipal comprehensive plan and a challenge is brought to the validity of a zoning ordinance of a participating municipality involving a proposed use, then the zoning hearing board or governing body, as the case may be, shall consider the availability of uses under zoning ordinances within the municipalities participating in the multimunicipal comprehensive plan within a reasonable geographic area and shall not limit its consideration to the application of the zoning ordinance on the municipality whose zoning ordinance is being challenged.

53 P.S. § 10916.1(h) (footnotes omitted).

The Board concluded that, because billboards were a permitted use in several of these municipalities within a reasonable geographic area, Outdoor's validity challenge was precluded by Section 916.1(h) of the MPC. Any issues related to this determination are not encompassed within our grant of allocatur and are beyond the scope of this appeal.

On June 13, 2019, the Common Pleas Court affirmed without taking additional evidence. The court rejected Outdoor's argument, finding no error of law in the Board's conclusion that the Zoning Ordinance was not *de facto* exclusionary. The trial court initially found this issue waived because the parties provided no authority on point and because PennDOT was not joined as a necessary party to the action. On the merits, the trial court held that it was the PennDOT regulation, not the Zoning Ordinance, that precluded the otherwise permitted use. The trial court relied upon *Montgomery Crossing Association v. Township of Lower Gwynedd*, in which the Commonwealth Court held that "if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead."[11] The trial court explained that, when the Township enacted the current iteration of the Zoning Ordinance in 2004, billboards could have been constructed in the B-1 zoning district. It was the intervening construction of the PennDOT ramp, and the application of PennDOT's regulation, that prohibited the use of billboards. To conclude that the Zoning Ordinance was exclusionary would, according to the trial court, "lead to the absurd result of creating an ongoing, impractical[ ] obligation for the Township to rezone and update its Zoning Ordinance every time an intervening condition not caused by the Township occurred."[12]

Outdoor appealed to the Commonwealth Court, which affirmed in an unpublished memorandum.[13] Outdoor argued to the Commonwealth Court that there was a *de facto* exclusion of billboards under the Zoning Ordinance because there was no location in the

---

[11] 758 A.2d 285, 290-91 (Pa. Cmwlth. 2000).

[12] Tr. Ct. Op. at 10.

[13] *In re Appeal of the April 24, 2018 Decision of the Charlestown Twp. Zoning Hearing Bd.*, 247 A.3d 1193, 2021 WL 208215, 826 C.D. 2019 (Pa. Cmwlth. Jan. 21, 2021).

Township that could accommodate a billboard and simultaneously comply with PennDOT's regulation. Outdoor asserted that the Township was obligated to amend its Zoning Ordinance to accommodate PennDOT's regulation following the construction of the Turnpike ramp.

In addition to *Montgomery Crossing*, the Commonwealth Court considered *Kaiserman v. Springfield Township*, 348 A.2d 467 (Pa. Cmwlth. 1975), as well as its unreported decision in *In re Glen Loch Two Associates, L.P.*, 2012 WL 8655008, 45 C.D. 2012 (Pa. Cmwlth. Nov. 29, 2012). *Kaiserman*, like *Montgomery Crossing*, declined to find a zoning ordinance *de facto* exclusionary where the ordinance permitted a particular use, but the available land was later developed with other permitted uses. *Glen Loch* likewise rejected an argument that the zoning code was *de facto* exclusionary because it permitted a particular use in a zoning district that was vacant when the zoning ordinance was enacted but, at the time of the challenge, no longer contained any available land. Applying these cases, the Commonwealth Court examined the substantive validity of the Zoning Ordinance "based upon conditions as they existed at the time of [the] ordinance's enactment."[14]

When the Zoning Ordinance was enacted in 2004, there was no Turnpike ramp at Phoenixville Pike, and no impediment to placing a billboard in the B-1 zoning district (subject to the Zoning Ordinance's setback requirement). According to the Commonwealth Court, it was not the Township's Zoning Ordinance that prevented the construction of a billboard in the B-1 zoning district, but rather the subsequent construction of the Turnpike ramp, the Outdoor Advertising Control Act, and PennDOT's regulation. The Commonwealth Court declined to attribute the acts of the General Assembly or the regulations of PennDOT to the Township. To hold otherwise would,

---

[14]     *Id.* at *10.

according to the Commonwealth Court, "require a municipality to rezone based upon another's use of its land."[15] The court declined to impose such an ongoing obligation on municipalities.

Judge Leavitt dissented, opining that the combined effect of the Zoning Ordinance and PennDOT's regulation made it unlawful to erect a billboard in the B-1 zoning district or anywhere else in the Township, a circumstance that operated to render the Zoning Ordinance *de facto* exclusionary. Rather than applying the land saturation cases of *Montgomery Crossing*, *Kaiserman*, and *Glen Loch*, Judge Leavitt relied upon the unreported decision in *Habit OPCO v. Borough of Dunmore*, 2011 WL 10858496, 2312 C.D. 2010 (Pa. Cmwlth. Apr. 21, 2011). In *Habit OPCO*, the Commonwealth Court held that a municipality's zoning ordinance was *de facto* exclusionary where it purported to permit a particular use, but imposed setback requirements that left no plot in the municipality large enough to accommodate that use. In reaching this conclusion, the *Habit OPCO* court explained that a challenger was not required to prove that the ordinance was exclusionary when enacted.[16] Judge Leavitt would have applied *Habit OPCO* to hold that the Zoning Ordinance was rendered exclusionary by state and local setback requirements. It was irrelevant, according to Judge Leavitt, that the Zoning Ordinance was valid at the time it was enacted.

We granted Outdoor's petition for allowance of appeal in order to resolve one issue:

> Did the Commonwealth Court err in holding that whether a zoning ordinance *de facto* excludes a legitimate business use—in this case outdoor billboards—is determined as of the time of enactment of the ordinance and

---

[15]     *Id.* at *11.

[16]     2011 WL 10858496, at *3.

does not consider the effect of other laws and regulations of other governmental bodies on the actual ability to locate that use as zoned by the municipality?[17]

II.    Arguments

Outdoor argues that the Zoning Ordinance and Section 445.4(b)(2)(i) of PennDOT's regulations together preclude the construction of billboards in the Township, which results in a *de facto* exclusion. Outdoor disagrees with the Commonwealth Court's application of saturation cases, in particular *Montgomery Crossing* and *Kaiserman*, to resolve its validity challenge. In *Montgomery Crossing* and *Kaiserman*, the land in the zoning districts had already been developed with other permitted uses at the time of the validity challenge. Outdoor believes that it was appropriate in those cases to examine the validity of the ordinance under conditions that existed when the ordinance was enacted. Property owners had multiple uses from which to choose, and choosing one use over alternative uses did not render the unchosen use excluded, nor did it preclude the property owners from later demolishing the chosen use to make way for other permitted uses. According to Outdoor, the Commonwealth Court rejected the validity challenges in *Montgomery Crossing* and *Kaiserman* because, at the time the ordinances were adopted, the particular use was possible, and hypothetically remained possible as a replacement for the current use.[18]

In contrast, Outdoor maintains that erecting a billboard on the Property is not prevented by other permitted, intervening uses of the land, but by a regulation that excludes billboards in the only zoning district in which the Zoning Ordinance permits them.

---

[17]    *In re April 24, 2018 Decision of Charlestown Twp. Zoning Hearing Bd.*, 266 A.3d 450 (Pa. 2021) (*per curiam*).

[18]    Appellant's Br. at 9 ("[D]espite the use of all available land for other uses, there remained the potential for the unbuilt use to be constructed within the zoning district or municipality.").

Rather than examining the legality of the Zoning Ordinance at the time of enactment, Outdoor urges that the question is whether, "in application," "the use is excluded."[19] It is immaterial to Outdoor whether the factual circumstances that created the exclusion existed when the Township adopted its ordinance. Like Judge Leavitt in dissent, Outdoor argues that *Habit OPCO* rejected the idea of requiring a challenger to prove that the ordinance was exclusionary when enacted.

Outdoor suggests that the Township easily can amend the Zoning Ordinance to permit billboards in parts of the Township not impacted by Section 445.4(b)(2)(i) of PennDOT's regulations. In a world of overlapping layers of governmental regulation, Outdoor perceives an ongoing obligation on the part of municipalities to respond to new governmental regulations restricting the development of land in a manner that facilitates legitimate business uses. Outdoor seeks a declaration that the Zoning Ordinance is *de facto* exclusionary, and a remand to the Commonwealth Court to consider the application of Section 916.1(h) of the MPC.

In response, the Township asserts that a challenger establishes exclusionary zoning based only on what the zoning ordinance permits or excludes.[20] Because the prohibition of billboards in this case was not accomplished by the Zoning Ordinance, the Township argues, the Zoning Ordinance is not exclusionary. Nor did the construction of the Turnpike ramp somehow create a *de facto* exclusion under the Zoning Ordinance, as the prohibition of billboards was not a condition imposed by the Township. Because it

---

[19]    *Id.* at 16.

[20]    *See, e.g.*, *Borough of Edgewood v. Lamanti's Pizzeria*, 556 A.2d 22, 24 (Pa. Cmwlth. 1989) ("*De facto* exclusion of a legitimate use is established where an ordinance appears to permit the use but imposes unreasonable restrictions which, when applied, effectively prohibit the use throughout the municipality.") (footnote omitted).

was not the Township that created the regulatory prohibition, the Township believes that the regulations cannot be attributed to it.

Under *Kaiserman* and *Montgomery Crossing*, the Township perceives no ongoing obligation for municipalities continuously to review and revise zoning ordinances to account for governmental regulations beyond the municipality's control. *Habit OPCO* is not persuasive authority to hold otherwise, according to the Township, because that case is readily distinguishable on its facts. Further, the Township asserts that imposing an affirmative and continuing duty upon municipalities to review the implications of governmental regulations outside of their control on every parcel of land within their borders is untenable. Municipalities already underwrite the expense of consulting with land use planners and solicitors who specialize in ensuring that a zoning ordinance, when enacted, conforms with regulations already imposed by other governmental agencies. The Township asserts that there is no basis to require more of municipalities in this regard. Consequently, the Township urges this Court to affirm the Commonwealth Court.

III.     Analysis

Where, as here, the trial court has taken no additional evidence, appellate review of the Board's decision is limited to determining whether the Board abused its discretion or committed an error of law.[21] An abuse of discretion occurs when the Board's findings are not supported by substantial evidence, meaning "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached."[22]

---

[21]     *Hertzberg v. Zoning Bd. of Adjustment for the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998).

[22]     *Exeter*, 962 A.2d at 659 (cleaned up).

Whether an ordinance is exclusionary is a question of law over which our standard of review is *de novo*, and our scope of review is plenary.[23]

The controlling principles of zoning law are well-settled. "Property owners have a constitutionally protected right to enjoy their property."[24] Article I, Section 1 of the Pennsylvania Constitution protects the people's right to enjoyment of private property, and the Fifth and Fourteenth Amendments to the United States Constitution circumscribe governmental interference with this right.[25] Property rights may be limited by zoning ordinances that bear a substantial relationship to a municipality's police power, that is, "governmental action taken to protect or preserve public health, safety, morality, and welfare."[26] A municipality's police power enables it to manage the growth of a community through its placement of private development into zoning districts within the community.[27] Modern growth management is implemented through local land use planning and zoning, premised upon the division of land into distinct zoning districts.[28]

---

[23] *In re Bd. of Comm'rs of Cheltenham Twp.*, 211 A.3d 845, 853 (Pa. 2019); *Womer Realty, LLC v. Twp. of Wilmington*, 206 A.3d 627, 640 (Pa. Cmwlth. 2019).

[24] *Exeter*, 962 A.2d at 659 (cleaned up).

[25] *Hopewell Twp. Bd. of Supervisors v. Golla*, 452 A.2d 1337, 1341 (Pa. 1982); *see* PA. CONST. art. I, § 1; U.S. CONST. AMENDS. V, XIV.

[26] *Exeter*, 962 A.2d at 659; *see also Nat'l Land & Inv. Co. v. Kohn*, 215 A.2d 597, 607 (Pa. 1966) ("Such ordinances must bear a substantial relationship to those police power purposes.").

[27] *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 397 (1926) (upholding a municipal zoning ordinance as a valid exercise of police power against a constitutional challenge).

[28] Pennsylvania's MPC enables local zoning ordinances to "permit, prohibit, regulate, restrict and determine . . . [u]ses of land, watercourses and other bodies of water," as well as the "[s]ize, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures." 53 P.S. § 10603(b)(1)-(2). Zoning ordinances are required to "reflect the policy goals of the municipality." *Id.* § 10606.

Zoning ordinances enjoy a presumption of constitutionality.[29]  To overcome this presumption, the challenger bears the burden of showing that the zoning ordinance completely or effectively excludes a legitimate use.[30]  A zoning ordinance that excludes a legitimate use of land may be found unconstitutionally exclusionary.  Such zoning ordinances are either *de jure* or *de facto* exclusionary.  *De jure* exclusion occurs when the "ordinance on its face totally excludes a use."[31]  *De facto* exclusion exists if, as applied, "an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished."[32]  If a challenger meets its burden of proving that the zoning ordinance is exclusionary, then the burden shifts to the municipality to prove that the exclusion "bears a substantial relationship to the public health, safety, morality, or welfare."[33]

Ordinances regulating billboards and other outdoor advertisements are within a municipality's police power.[34]  In matters of zoning, "billboards are not objectionable *per*

---

[29]  *Exeter*, 962 A.2d at 659 (cleaned up).

[30]  *Interstate Outdoor Adver., L.P. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 (Pa. Cmwlth. 2012).

[31]  *Exeter*, 962 A.2d at 659.

[32]  *Exeter*, 962 A.2d at 659 (cleaned up); *Hodge v. Zoning Hearing Bd. of West Bradford Twp.*, 312 A.2d 813, 818 (Pa. Cmwlth. 1973) ("When. . . a challenger alleges that there is *de facto* exclusionary zoning, [the challenger] carries the heavy burden of showing that, even though on its face an ordinance permits a specific use, the ordinance as applied effectively prohibits such use.").

[33]  *In re Bartkowski Inv. Group, Inc.*, 106 A.3d 230, 238-39 (Pa. Cmwlth. 2014); *Exeter*, 962 A.2d at 661.

[34]  *Exeter*, 962 A.2d at 660 ("[A] municipality may divide the municipal area into districts and prohibit or regulate activities such as advertising in areas whose character is not consistent with that use.").

*se.*[35]  A "blanket prohibition" on billboards in the entire municipality without justification would not pass constitutional muster.[36]  Billboards have been recognized as a legitimate use of property in Pennsylvania, and may be regulated, but not excluded, from a municipality through its zoning ordinance.[37]

We have established a two-step analysis for examining whether a zoning ordinance is unlawfully exclusionary.  First, we consider whether the challenging party has overcome the presumed constitutionality of the ordinance by showing that it excludes billboards as a use.[38]  Second, if the challenger has done so, we then consider whether the municipality has salvaged the ordinance by showing that the exclusion bears a substantial relationship to the public health, safety, morality, or welfare.[39]  The case before us here involves only the first step in this analysis.

As this is a *de facto* challenge, in order to overcome the presumption of constitutionality, Outdoor would have to demonstrate that, as applied, the Zoning Ordinance "appears to permit a use, but under such conditions that the use cannot in fact be accomplished."[40]  The evidence presented to the Board established that the latest

---

[35]     *Id.*

[36]     *Id.*; *Exton Quarries, Inc. v. Zoning Bd. of Adjustment of West Whiteland Twp.*, 228 A.2d 169, 179 (Pa. 1967) ("[T]he constitutionality of zoning ordinances which totally prohibit legitimate businesses . . . from an entire community should be regarded with particular circumspection.").

[37]     *Norate Corp., Inc. v. Zoning Bd. of Adjustment of Upper Moreland Twp.*, 207 A.2d 890, 895 (Pa. 1965), *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 477 (Pa. Cmwlth. 2006); *J.B. Steven, Inc. v. Bd. of Comm'rs of Wilkins Twp.*, 654 A.2d 135 (Pa. Cmwlth. 1995).

[38]     *Exeter*, 962 A.2d at 661.

[39]     *Id.*

[40]     *Id.* at 659.

iteration of the Zoning Ordinance was enacted in 2004 to permit billboards in the B-1 zoning district, subject to a setback requirement. Construction of the Turnpike ramp at Phoenixville Pike commenced several years later, in 2011. This construction triggered application of the Outdoor Advertising Control Act and regulations promulgated thereunder by PennDot. Section 445.4(b)(2)(i) of these regulations prohibits the erection of any billboard within 500 feet of an interchange.[41] Consequently, while the Zoning Ordinance permits billboards in the B-1 zoning district, the PennDOT regulation effectively prohibits them in the same location.

A successful challenger in a *de facto* exclusion case demonstrates that the zoning ordinance appears to permit a use, while also imposing conditions that operate to render the use impossible. This was the case in *Township of Exeter*, where we considered whether a municipality's restriction of the size of billboards was *de facto* exclusionary. The local zoning ordinance prohibited signs, including billboards, from exceeding a size of twenty-five square feet. A company in the business of erecting billboards challenged the ordinance as a *de facto* exclusion of billboards, which, by industry standards, are sized at either 300 or 672 square feet. After acknowledging the evidence that a twenty-five square foot sign was too small to convey an advertising message to the motoring public, this Court agreed with the company that the local zoning ordinance's size limitation was a *de facto* exclusion of billboards in the township: although that ordinance appeared to permit billboards as a use, it did so under conditions such that the use could not be accomplished.[42]

---

[41]　67 Pa. Code § 445.4(b)(2)(i).

[42]　*Exeter*, 962 A.2d at 662 ("Thus, Land Displays proved a *de facto* exclusion—that is, it demonstrated that Section 105.2 appears to permit billboards as a use, but under such conditions that the use cannot in fact be accomplished.").

Similarly, in *National Land & Investment Company v. Kohn*, we declared an ordinance exclusionary where it imposed a four-acre lot minimum in residential districts in the township. Reasoning that the primary purpose of the zoning ordinance was "to prevent the entrance of newcomers in order to avoid future burdens," this Court held that "the general welfare is not fostered or promoted by a zoning ordinance designed to be exclusive and exclusionary."[43] In *Surrick v. Zoning Hearing Board of Upper Providence Township*, we held that a zoning ordinance unlawfully excluded multi-family dwellings because it classified only 1.14% of the township acreage for this use.[44] And in *Eller v. Board of Adjustment of London Britain Township*, we held that a zoning ordinance was exclusionary because of the impossibility created by its set-back requirements.[45]

In cases of exclusionary zoning, the focus is on the zoning ordinance.[46] An ordinance is declared exclusionary in the face of a *de facto* challenge solely by reference

---

[43] 215 A.2d 597, 612 (Pa. 1965).

[44] 382 A.2d 105, 111-12 (Pa. 1977).

[45] 198 A.2d 863, 866-67 (Pa. 1964).

[46] *See Willistown Twp. v. Chesterdale Farms, Inc.*, 341 A.2d 466, 468 (Pa. 1975) (holding that a zoning ordinance that provided for apartment construction in only eighty of the township's 11,589 acres was exclusionary); *Appeal of Girsh*, 263 A.2d 395, 398 (Pa. 1970) ("appellee cannot have a zoning scheme that makes no reasonable provision for apartment uses"); *Baker v. Upper Southampton Twp. Zoning Hearing Bd.*, 830 A.2d 600, 606 (Pa. Cmwlth. 2003) (a zoning ordinance that only permitted off-premises signs in a manner that excluded advertising was exclusionary); *Adams Outdoor Adver., Ltd. v. Hanover Twp. Zoning Hearing Bd.*, 633 A.2d 240, 244 (Pa. Cmwlth. 1993) (holding that a zoning ordinance that only permitted advertising signs as an accessory use was exclusionary because an advertising sign cannot be an accessory use); *Stahl v. Upper Southampton Twp. Zoning Hearing Bd.*, 606 A.2d 960, 966-67 (Pa. Cmwlth. 1992) (holding that a zoning ordinance's provisions relating to mobile home parks effected a *de facto* exclusion of mobile home parks and were unduly restrictive); *Borough of Edgewood*, 556 A.2d at 24 (declaring that an ordinance, as applied, excluded restaurants, and explaining that "[d]e facto exclusion of a legitimate use is established where an ordinance appears to permit the use but imposes unreasonable restrictions which, when applied, effectively prohibit the use throughout the municipality"); *Borough of Dickson City v.*

---

to the restrictions that the zoning ordinance imposes. Likewise, ordinances are upheld in the face of such challenges through an examination of the zoning ordinance.[47] Claims of *de jure* exclusion are likewise resolved by examining the zoning ordinance to determine whether it, by its terms, prohibits a particular use in the municipality.[48]

---

*Patrick Outdoor Media, Inc.*, 496 A.2d 427, 429 (Pa. Cmwlth. 1985) (holding that an ordinance was *de facto* exclusionary where it allowed billboards but also imposed size restrictions that rendered the use impossible).

[47] *See Upper Salford Twp. v. Collin*s, 669 A.2d 335, 337 (Pa. 1995) (zoning ordinance did not exclude mobile home parks where two zoning districts allowed any use not specifically excluded); *Sullivan v. Bd. of Supervisors of Lower Makefield Twp.*, 348 A.2d 464, 466-67 (Pa. Cmwlth. 1975) (*en banc*) (holding that the allocation of commercial uses to two zoning districts with minimum lot sizes did not constitute a total exclusion of commercial use or establish that the provision for commercial development was illusory); *MarkWest Liberty Midstream & Resources, LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 572 (Pa. Cmwlth. 2014) (rejecting the claim that zoning ordinance excludes natural gas compressor stations because the ordinance permitted the use, subject to reasonable conditions); *Smith v. Hanover Zoning Hearing Bd.*, 78 A.3d 1212, 1218-22 (Pa. Cmwlth. 2013) (rejecting argument that various restrictions imposed by zoning ordinance rendered the ordinance exclusionary); *Interstate Outdoor Adver., L.P. v. Zoning Hearing Bd, of Warrington Twp.*, 39 A.3d 1019, 1026-27 (Pa. Cmwlth. 2012) (rejecting argument that ordinance's size restrictions pertaining to billboards resulted in a *de facto* exclusion); *Polay v. Bd. of Supervisors of West Vincent Twp.*, 752 A.2d 434, 436-37 (Pa. Cmwlth. 2000) (holding that zoning ordinance did not exclude a particular use that it permitted by special exception); *HEJ Partnership v. Clinton Cty. Comm'rs*, 657 A.2d 116, 118-19 (Pa. Cmwlth. 1995) (zoning ordinance did not exclude compost facilities where the ordinance prohibited the use in agricultural districts but permitted the use in industrial districts).

[48] *See, e.g.*, *Exton Quarries*, 228 A.2d at 179-82 (zoning ordinance that prohibited quarrying throughout the municipality was unconstitutional on its face); *Appeal of Ammon R. Smith Auto Co.*, 223 A.2d 683, 684-85 (Pa. 1966) (municipality had no power to enact zoning ordinance that facially prohibited flashing lights on signs); *Norate*, 207 A.2d at 895 (holding that zoning ordinance prohibiting off-site billboards throughout the municipality was exclusionary); *Bartkowski*, 106 A.3d at 250 (holding zoning ordinance unconstitutional for, by its terms, totally excluding billboards from the entire municipality); *Cty. of Beaver v. Borough of Beaver Zoning Hearing Bd.*, 656 A.2d 157, 158 (Pa. Cmwlth. 1995) (finding ordinance that facially excluded the use of land for a jail to be *de jure* exclusionary).

These precedents establish that exclusionary zoning challenges are resolved by analyses of the zoning ordinances at issue. If the challenged zoning ordinance appears to permit a use but also imposes conditions that make it impossible to accomplish the use, it is *de facto* exclusionary.[49] In other words, to the extent an ordinance excludes a use, it is, *ipso facto*, exclusionary. When a prohibition or impossibility arises by virtue of something other than the ordinance, it cannot be said that the ordinance is the cause of that impossibility or, consequently, that it is exclusionary.[50]

In contrast to cases finding exclusionary zoning, Outdoor did not establish that billboards are excluded because the Township imposed a condition that, as applied, prohibits billboards. The Township zoned for billboards in the B-1 zoning district, and

---

[49]     *Exeter*, 962 A.2d at 659; *Keinath v. Twp. of Edgmont*, 964 A.2d 458, 464 (Pa. Cmwlth. 2009) ("An ordinance is *de facto* exclusionary if it allows a use on its face, but its provisions have the effect of prohibiting the use in the municipality."); *Macioce v. Zoning Hearing Bd. of Borough of Baldwin*, 850 A.2d 882, 888 (Pa. Cmwlth. 2004) ("*De facto* exclusion exists where an ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality."); *Ficco v. Bd. of Supervisors of Hempfield Twp.*, 677 A.2d 897, 899 (Pa. Cmwlth. 1996) ("Unless the challenger demonstrates that the ordinance in question completely or effectively excludes a legitimate use . . . the challenger has failed to carry its burden. . . .").

[50]     In dissent, Justice Mundy posits that it is the combination of the PennDOT regulation and the setback requirements of the preexisting zoning ordinance that effectively bars the placement of billboards in the B-1 zoning district. Dissenting Op. at 3 (Mundy, J). Justice Mundy relies upon testimony from the Township's planning expert, Thomas Comitta, that there is a small portion of the B-1 Zoning District that is outside of PennDOT's 500-foot setback requirement, but also outside of the Ordinance's maximum thirty-foot setback. *Id.* The Board construed Comitta's testimony as indicating that there was a small portion of the B-1 Zoning District that was available for billboard use. Board's Findings of Fact at 4, ¶21. More importantly, there is no dispute that the Ordinance permitted billboards in the B-1 Zoning District, or that this use remained possible until construction of the PennDOT ramp triggered PennDOT's regulation, effectively prohibiting billboards near the ramp's vehicular traffic. Our precedent resolves exclusionary zoning challenges by examining the terms of the challenged zoning ordinance itself, not the combined effect of overlapping state-wide regulations.

PennDOT's regulation effectively precludes billboards in that district.[51] Because PennDOT's regulation, rather than the Zoning Ordinance, is the source of the exclusion, the ordinance is not *de facto* exclusionary.

Outdoor attempts to shift the focus away from the Zoning Ordinance by asserting that the relevant question is whether "in application" the use is excluded. By adopting the passive voice, Outdoor's proposed legal test raises more questions than it would resolve. Simply to examine whether a use is excluded is not to resolve who is excluding the use, or what is being applied to exclude that use. Whether a zoning ordinance is exclusionary is not resolved by the mere fact that one's preferred use is not possible, but rather by examining whether it is the zoning ordinance that causes that impossibility.

Like the Commonwealth Court below, we analogize this case to precedent rejecting claims of *de facto* exclusion where the development or restriction of land by a third party, rather than the ordinance, renders the use impossible. In *Kaiserman*, the zoning ordinance set aside a portion of land for multifamily dwellings. In the years after the ordinance's enactment, the land had been developed with single-family homes, another permitted use. Arguing that the practical effect of the ordinance, coupled with the intervening pattern of development, left no vacant land for apartment buildings, the challengers asserted that the ordinance was *de facto* exclusionary. The Commonwealth

---

[51] For Justice Mundy, the timing of the PennDOT regulation *vis a vis* the ordinance is immaterial. Justice Mundy asserts that today's opinion "sets the stage" for municipalities to rely upon pre-existing regulations "to manipulate" the zoning process in order "to exclude unpopular property uses." Dissenting Op. at 4 (Mundy, J.). Our opinion addresses whether a zoning ordinance is rendered exclusionary by a subsequent, state-wide regulation. We are not faced with a situation where a municipality zoned for a particular use in a district subject to statewide regulations that already precluded that use. The Township asserts that the adoption of a zoning ordinance involves hiring experts and consultants "who specialize in ensuring that a zoning ordinance, when adopted, complies with those regulations already levied by the Legislature and the Judiciary." Appellee's Brief at 19. We take the Township at its word.

Court rejected this argument because it was not the zoning ordinance that accomplished the exclusion, and the challengers had not contended that the ordinance was exclusionary at the time it was passed.[52]

Similarly, in *Montgomery Crossing*, a developer challenged a zoning ordinance as excluding mobile home parks.[53] When the ordinance was enacted, it set aside a portion of vacant land for a mobile home park in a residential district. The land was developed instead with apartments, another permitted use. Rejecting the developer's challenge, the Commonwealth Court held that the intervening development of vacant land does not render a zoning ordinance *de facto* exclusionary.[54] Nor did the municipality have an "ongoing obligation" to rezone for mobile home parks, because the vacant land in the district that permitted that use had been developed for apartments.[55]

The Commonwealth Court likewise has rejected substantive validity challenges brought by mining companies claiming that a zoning ordinance excluded mining activities because established quarries had been depleted, observing that the question of exclusion is resolved not by the fact that a proposed use is not possible, but rather by examining whether the zoning ordinance is the cause of that impossibility. In *Larock v. Board of Supervisors*, challengers who owned property zoned for conservation challenged the

---

[52] *Kaiserman*, 348 A.2d at 470-71.

[53] 758 A.2d at 289-90.

[54] *Id.* at 290 ("[I]f a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead."); *see also In re Groff Appeal*, 274 A.2d 574, 575 (Pa. Cmwlth. 1971) ("While it may be inherently discriminatory for a township to totally exclude a use from its borders, we fail to see the analogy by which we could reason that a legitimately appropriated area for a specific use which has been saturated is in the same posture as a total prohibition of that use within a municipality.").

[55] *Id.* at 291.

validity of an ordinance that permitted a quarry only in an industrial zoning district where all economically viable minerals already had been extracted.[56] The Commonwealth Court rejected this challenge, explaining that the exclusionary challenge depends not on whether minerals were recoverable in the district zoned for quarries, but on whether the zoning ordinance was the reason for this reality. "[T]here is a difference between the extraction of minerals impacted by depletion versus the extraction of minerals impacted by the application of an ordinance which is *de facto* exclusionary."[57] Because the extraction of minerals was impeded by depletion, rather than by application of the ordinance, the ordinance was not exclusionary. The Commonwealth Court declined to require a municipality to designate a new area for the proposed use where an established area had been depleted, consistent with *Montgomery Crossing*. The Commonwealth Court also declined to impose an obligation on municipalities to rezone land for mineral extraction simply because the land devoted to mineral extraction was depleted.

Likewise, in *Hanson Aggregates Pennsylvania Inc. v. College Township Council*, the owner of a depleted quarry challenged a zoning ordinance on the grounds that it failed to provide for reasonable mineral development.[58] Rejecting this challenge, the Commonwealth Court held that the ordinance was not exclusionary, because "[f]uture extraction is impacted by depletion rather than by application of the Ordinance."[59]

Considering the impact of governmental regulations in *D.C. Guelich Explosives Co. v. Zoning Hearing Board of Mifflin Township*, the Commonwealth Court rejected a

---

[56] 961 A.2d 916, 927 (Pa. Cmwlth. 2008).

[57] *Id.*

[58] 911 A.2d 592 (Pa. Cmwlth. 2006).

[59] *Id.* at 599.

claim of *de facto* exclusion where an ordinance permitted a proposed use, but the available land was insufficient to comply with state and federal regulations of that use. As the Commonwealth Court explained, "these circumstances do not render the Ordinance exclusionary and unconstitutional."[60]

The logic of cases involving the intervening development of land applies with equal force to circumstances involving the intervening statewide regulation of land. Neither situation involves a zoning ordinance that appears to permit a use but also imposes conditions rendering that use impossible. In both situations, the inability to develop the land for a permitted use is caused by the actions of third parties. Like the zoning ordinance in *Montgomery Crossing*, the Zoning Ordinance *sub judice* permits a use on land that was rendered unusable for that purpose by the intervening actions of a third party. Other than its setback provision, nothing in the Zoning Ordinance restricts the placement of billboards in the B-1 zoning district.

Outdoor attempts to distinguish the Commonwealth Court's saturation precedents by arguing that these cases were premised upon the potential for future development of the challenger's proposed use notwithstanding the saturation of the land with other permitted uses. There is no more or less potential for the future construction of a billboard in the B-1 zoning district involved in this case than there was for an apartment building in *Kaiserman* or a mobile home park in *Montgomery Crossing*. We can hypothesize that the Turnpike could someday be moved or demolished, ending the applicability of Section 445.4(b)(2)(i), to the same extent that we can speculate that the permitted uses in *Kaiserman* and *Montgomery Crossing* could, someday, be altered or demolished so as to free the land for apartment buildings or a mobile home park.

---

[60]     523 A.2d 1208, 1211 (Pa. Cmwlth. 1987).

Outdoor believes that its challenge to the Zoning Ordinance is not resolved by examining whether the ordinance was exclusionary when enacted. As we have explained, *de facto* exclusion is established when a zoning ordinance excludes a permitted use. A successful challenger alleging *de facto* exclusion will have to establish that a municipality's zoning ordinance, rather than some other cause, is the source of the exclusion. The exercise of looking back in time to the circumstances that existed when the ordinance was enacted focuses the inquiry on what the zoning ordinance accomplished, as distinguished from the impact of any other actors or circumstances. Actions by state, local, or private entities cannot be attributed to the Township's Zoning Ordinance. Although the *Kaiserman* court examined whether the ordinance, at the time of enactment, was exclusionary, it did so to establish that the intervening development, rather than the zoning ordinance, accomplished the exclusion.

*Habit OPCO* is not persuasive authority to find exclusionary zoning here. In *Habit OPCO*, the landowner filed a validity challenge to the municipality's zoning ordinance, asserting that the ordinance purported to permit methadone treatment facilities but restricted the location with a setback requirement such that no location could accommodate the use. In particular, the ordinance required methadone treatment facilities to be at least 1000 feet from existing developments. Because there was no parcel of land on which it was possible to comply with the setback requirement, the Commonwealth Court found that the ordinance was *de facto* exclusionary. Defending the ordinance, the municipality argued that the ordinance should be judged at the time of its enactment, and that the challenger failed to produce evidence that the ordinance was exclusionary when enacted. The Commonwealth Court rejected this argument, observing that it had never imposed such a requirement on a challenger.[61]

---

[61] *Habit OPCO*, 2011 WL 10858496 at *3.

*Habit OPCO* is not analogous to this case or to saturation cases.[62]  The exclusion in *Habit OPCO* was the result of the zoning ordinance itself, as it is in all cases of exclusionary zoning.  Because there was no area in the zoning district that simultaneously could support a methadone clinic and accommodate the ordinance's setback requirement, the use was illusory *ab initio* under the zoning ordinance itself.  The Commonwealth Court recognized this distinction, supporting its decision with citations to cases of exclusionary zoning which, by definition, are premised upon the zoning ordinance itself.[63]  Relying on this precedent, the *Habit OPCO* court held that the setback requirement applicable to methadone clinics rendered the zoning ordinance exclusionary.  Although it declined to require a challenger to prove that an ordinance was exclusionary when enacted, the Commonwealth Court faithfully required the challenger to prove that the ordinance itself was exclusionary, *i.e.,* that it was the cause of the impossibility.  Unlike *Habit OPCO*, it is not the Zoning Ordinance that precludes billboards in the Township, but the development of property and the regulations imposed as a result of that development.

Were Outdoor's position to prevail, it would impose a constitutional obligation on municipalities continuously to review and update their zoning ordinances to account for governmental regulations and the impact of development by third parties, and to ensure that various uses are permitted and possible in the municipality.  There is no basis in the law to impose this requirement.  Municipalities have no duty to review and revise their

---

[62]    *See id.* ("Habit OPCO does not assert that all of the C-4 District has been developed; rather, it asserts that the setback requirement [of the zoning ordinance] precludes it from locating a methadone clinic anywhere in the C-4 District, developed or not.").

[63]    *See id.* at *4 (citing *Eller*, 198 A.2d 863 (invalidating as exclusionary an ordinance that required any mushroom house to be 1000 feet from a property boundary); *Greenwood Twp. v. Kefo, Inc.*, 416 A.2d 583 (Pa. Cmwlth. 1980) (finding zoning ordinance's setback requirements exclusionary)).

zoning ordinances or to rezone for a particular use where a property owner's use is limited by third parties, including through governmental regulations beyond the municipality's control. Like the Commonwealth Court in *Montgomery Crossing*, we decline to impose such a duty.[64]

Imposing an ongoing constitutional obligation to respond to regulations by rezoning to guarantee locations for regulated uses would be inconsistent with sound municipal planning. In a developed and regulated municipality, it would not be uncommon to find areas that are saturated with development or regulated by state or federal agencies. To force municipalities continuously to rezone in order to account for development and intervening regulations, and constantly to locate particular uses where they are not prohibited by such regulations, would be contrary to sound land use planning, the purpose of which is to divide land within a community into different zones permitting distinct uses that reflect "the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality."[65] Zoning ordinances are adopted following significant planning and consideration of where, and to what extent, to permit certain uses throughout a municipality, formed following consultation with land use experts. Imposing an additional, limitless obligation to review and revise zoning ordinances to determine the impact of governmental regulation on the zoning scheme or

---

[64] *Montgomery Crossing*, 758 A.2d at 291; *see also Larock*, 961 A.2d at 927 ("A municipality should not necessarily be required to designate a new area for mineral extraction where an established mineral extraction zone within the township has been depleted.").

[65] 53 P.S. § 10603(i); *see also Kaiserman*, 348 A.2d at 41 ("To allow open ground in a township to be used for any purpose whatever solely because little or no undeveloped land remains in areas properly zoned for that purpose would be the antithesis of that sound planning which is the rationale for all zoning.").

on individual parcels in the municipality would far exceed the constitutional requirements that attend land use planning as codified in zoning ordinances.[66]

Questions regarding Outdoor's remedy confirm that this case does not involve exclusionary zoning. In its challenge to the Board, Outdoor indicated that it desired site-specific relief.[67] When a property owner successfully establishes that a zoning ordinance is *de facto* exclusionary, the success is premised upon establishing that the ordinance on its face permits the proposed use, but under such conditions that the use cannot in fact be accomplished.[68] The unlawful *de facto* exclusion may be cured by eliminating the ordinance's restrictions that caused the exclusion, while leaving the remainder of the ordinance intact.[69] As a result, the landowner can develop the proposed use "according to the explicit terms of the ordinance that remain."[70] To the extent that a *de facto* exclusion

---

[66] The MPC details a municipality's powers and responsibilities with respect to zoning and land development, and requires a municipality to review its comprehensive plan every ten years. 53 P.S. § 10301(c). No similar statutory obligation requires periodic review of a municipality's zoning ordinances. Under the doctrine of *expressio unius est exclusio alterius*, "the inclusion of a specific matter in a statute implies the exclusion of other matters." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020). Although the legislature could impose a review requirement for zoning ordinances, it has thus far declined to do so.

There presently is no allegation that the Township has failed to comply with the Phoenixville Regional Comprehensive Plan or that the Township has an obligation under the comprehensive plan to update its Zoning Ordinance. The issue accepted for review solely relates to whether the Township has, through its Zoning Ordinance, *de facto* excluded billboards.

[67] *See* Br. of Challenger, Zoning Hearing Bd., at 16 ("Charlestown Outdoor, LLC is entitled to site specific relief under the MPC in prevailing on its validity challenge.").

[68] *Exeter*, 962 A.2d at 659.

[69] *H.R. Miller Co., Inc. v. Bd. of Supervisors of Lancaster Twp.*, 605 A.2d 321, 325 (Pa. 1992).

[70] *Id.*

challenger is successful, that success is limited to obtaining "the opportunity to acquire and develop property in the zone where the use is permitted."[71] If the defect Outdoor asserted could not be cured by severing restrictive provisions of the ordinance, then "the case stands in the same posture as one involving a *de jure* exclusion. The sole remedy is to allow the use somewhere, and . . . the successful litigant must receive that benefit in the form of at least partial approval of the proposal."[72]

Were Outdoor to succeed in its *de facto* exclusion challenge, neither severing the restrictions of the Zoning Ordinance that rendered the permitted use impossible nor allowing Outdoor to erect a billboard on the Property would be available as a remedy. As we have shown, the permitted use is not made impossible by application of the Zoning Ordinance, and there is nothing restrictive in the Zoning Ordinance to sever. Nor would Outdoor be able to erect a billboard on the Property, in view of PennDOT's regulatory 500-foot interchange setback requirement. Nor does it appear that Outdoor would prefer instead to be permitted to erect billboards elsewhere in the Township. Before the Board, Outdoor established that the primary determinant for placing billboards along the Turnpike is the amount of vehicular traffic at this site, making the Property ideal from an advertising standpoint. Outdoor would be unable to capitalize on equivalent advertising potential elsewhere in the Township. The relief that Outdoor seeks can come only from PennDOT, not from the Township, a circumstance that further demonstrates the absence of a *de facto* exclusion in the Zoning Ordinance.[73]

---

[71]     *Id.*

[72]     *Id.*

[73]     In Justice Brobson's view, the PennDOT regulation has preempted the Zoning Ordinance, and the Zoning Ordinance is, therefore, *de jure* exclusionary. Justice Brobson favors vacating the Commonwealth Court's decision and remanding for consideration of

IV.    Conclusion

When the Zoning Ordinance created the B-1 district and permitted billboards in this district, it did not impose conditions that rendered this use impossible.  It was not until several years later that the Turnpike ramp and the regulations that it triggered operated to preclude billboards in the B-1 district.  We agree with the Commonwealth Court, the trial court, and the Board, that the condition prohibiting billboards was not imposed by the Township, but rather by PennDOT.  Because the restriction complained of does not arise from the Zoning Ordinance, the Zoning Ordinance is not *de facto* exclusionary.  We affirm the Commonwealth Court's order.[74]

Chief Justice Baer and Justices Todd, Donohue and Dougherty join the opinion.

Justice Mundy files a dissenting opinion.

Justice Brobson files a dissenting opinion.

_____

whether the Zoning Ordinance's invalidity is saved by the comprehensive municipal plan in which the Township participates under Section 916.1(h) of the MPC.

As Justice Brobson recognizes, however, Outdoor has not advanced a preemption argument in this case or argued that the Ordinance is *de jure* exclusionary.  Dissenting Op. at 10, n.12 (Brobson, J.).  The sole issue that we granted allocatur to resolve is whether a *de facto* exclusion challenge "is determined as of the time of enactment of the ordinance" and without regard to the effect of "other laws and regulations."  266 A.3d at 450.  This issue does not encompass a *de jure* exclusion argument or a preemption argument which, in any event, Outdoor does not advance.  Because we conclude that the Zoning Ordinance is not exclusionary, there is no need to remand to the Commonwealth Court to resolve whether Section 916.1(h) of the MPC saves the Zoning Ordinance.

[74]    Outdoor has filed a motion to strike portions of the Township's brief under Pa.R.A.P. 123(b) as being beyond the scope of this appeal.  According to Outdoor, the only issue in this case is whether the Zoning Ordinance is exclusionary.  To the extent the Township relies on Section 916.1(h) of the MPC or argues that Outdoor would not be entitled to site-specific relief because Outdoor declined to submit building plans to the Board, Outdoor asserts that these arguments are beyond the scope of this appeal.

We deny as moot Outdoor's motion to strike.  We have resolved this appeal in accord with the issue before the Court by determining that the Zoning Ordinance is not *de facto*

exclusionary, without regard to Section 916(h) or to Outdoor's decision not to include building plans with its validity challenge.